# SUPERIOR COURT.

JOHN F. CURRY *vs.* CHARLES WARNER CO.

New Castle County, May Term, *1895.*

**Patent. Assignment. Profits.**—Where a patentee sells his rights under the patent of an entire process under an agreement to receive as part of the consideration therefor a specified share of all profits to be derived by the purchaser from the use and employment of the patented invention, the word profits means acquisition beyond expenditure, or the excess of sale or value received over costs.

**Same.**—Under an agreement for the sale of a patent in part consideration of a share of the profits of its use and employment, where the patented invention is a process covering an entire manufacture, and not improvement on, addition to, or combination of any other machine or process, the profits are not to be measured by the advantages gained in excess of those resulting from any other process of manufacture, but by taking the total sales of the manufactured product, and deducting all legitimate costs and charges of the manufacture and sale.

**Same.**—In estimating profits of the use of a patented invention it is not permissible to take such items of the business as may show gain and reject such as show loss, but the entire business must be taken when that is covered by the use of the patent.

**Same. Tender.**—Where, under a contract for the sale of a patent party in consideration of the payment *forthwith* of a specified share of all sales of the invention in whole or in part, the patent was assigned to a corporation and payment received in its stock, a tender of the specified share of such stock made one year and four months after the assignment, was not such as to interfere with the right to recover the value of the stock as of the date of the assignment.

**Covenant. Construction.**—In an action for the breach of a covenant it is to be construed most strongly against the plaintiff covenantor.

**Witness. Refreshing Memory. Memorandum.**—A witness may refresh his memory from a memorandum which he has made from books of account and verified.

**Attorney and Client. Evidence. Privileged Communications.**—A letter from a client to his attorneys stating the value of stock offered in settlement of counsel fees is admissible as evidence of value in an action by a third party against the writer of the letter, for damages for non-delivery of similar stock.

**Evidence. Partnership. Market Value. Profits.**—Where manufacturers of mortar were also engaged in the sale of sand, lime, etc., in an action for a share of profits by one who was associated with them in the mortar business alone he was not entitled to have the sand, etc., charged at its cost, but at the fair market price, and testimony as to the cost of such items is inadmissible.

This was an action of covenant to recover damages for a failure on the part of the defendant to perform the covenants contained in an agreement made and executed by and between the plaintiff and defendant on the twenty-ninth day of March, 1892. The writ of summons was issued February 3, 1894. The agreement was as follows :

" This agreement, made this twenty-ninth day of March A. D. eighteen hundred and ninety-two, between the Charles Warner Company, a corporation of the State of Delaware, party of the first part, and John Franklin Curry, of the City of Wilmington, New Castle County and State of Delaware, party of the second part ;

WHEREAS, Edward Tatnall Warner of the City of Wilmington aforesaid, and the said John Franklin Curry are the inventors of an improvement in the art of making mortar, for which application has been made for letters patent of the United States; and

WHEREAS the said Edward Tatnall Warner and John Franklin Curry have this day assigned all their rights, title and interest in said invention to the said Charles Warner Company in consider-

ation, *inter alia,* of the execution by the said Charles Warner Company to the said John Franklin Curry of these presents;

Now this agreement witnesseth that the said party of the first part, for and in consideration of the assignment of the said invention as aforesaid and of the sum of one dollar to it now paid by the said party of the second part, doth hereby covenant, promise and agree to and with the said party of the second part as follows, to wit:

1. That the said party of the first part shall from and after the time of its receiving letters patent of the United States for said invention account for and pay to the said party of the second part, his executors, administrators or assigns, one equal tenth part of all net royalties which shall be received by the said party of the first part for or on account of the said patented invention; the payment of said part of said net royalties to be made to the said party of the second part quarterly from and after the receipt by the said party of the first part of the letters patent as aforesaid.

2. That the said party of the first part shall and will in case of the sale by it of the whole or any part of said patented invention, forthwith pay to the said party of the second part, his executors, administrators or assigns, one equal tenth part of the net proceeds of any all such sale or sales; it being the intent of these presents that the said party of the second part, his executors, administrators or assigns, shall have the beneficial enjoyment of an equal tenth part of all profits which shall be derived by the said party of the first part from the use or employment of the said patented invention, and also of one equal tenth part of the net proceeds of the sale, assignment or grant of the whole or any part or parts of said patented invention.

In witness whereof the said party of the first part hath to these presents, executed in duplicate, caused its name to be subscribed by the said Edward Tatnall Warner as President thereof, and its corporate seal to be affixed, and the said party of the second part hath

hereto set his hand and seal on the day and year first above written.

Signed, sealed and delivered ⎱ CHAS. WARNER COMPANY      [seal]
    in the presence of      ⎰      Per E. T. WARNER, *President*
CHARLES F. SMALLEY

               Attest,

                   CHAS. C. BYE, *Secretary*

                            J. FRANK CURRY      [seal]

    Letters patent of the United States were granted to Edward T. Warner and J. Frank Curry on April 26th, 1892. These letters patent were regularly assigned to the Charles Warner Co., and on June 11th, 1892, assigned by the Charles Warner Co., to Alfred D. Warner, reserving the exclusive right to use the same in Wilmington, Delaware, and Philadelphia, Pa. On or about June 14th, 1892, Alfred D. Warner, assigned them to the Warner Process Mortar Company, a corporation of the State of West Virginia, for which the plaintiff admits they received on the 12th day of July, 1892, eleven thousand shares of the stock of the said Warner Process Mortar Company; and that the said company tendered eleven hundred shares of said stock to the plaintiff for the first time on October 24th, 1893, upon the condition he would give receipt in full of all claim for stock of Warner Process Mortar Company.

    The defendants granted a license to the Quaker City Mortar Company of Philadelphia to use the invention in that city for which they received nothing. The defendants never paid the plaintiff anything after the assignment claiming there was no profit from the use or employment of the patent or invention; nothing received for royalties, and nothing for sales, assignments or grants except the shares of stock as stated above. The Charles Warner Company were dealers in sand, lime, coal &c.

    The plaintiff claimed, and offered evidence to show he was entitled to one tenth of four hundred dollars as proceeds of sale to

Quaker City Mortar Company ; one tenth of twenty-two thousand shares of the Warner Process Mortar Company, and three thousand dollars as his share of profits in use of patent as operated by Charles Warner Company in the City of Wilmington.

The case being at issue and ruled for trial at a future day in the term, *Ball*, on behalf of the plaintiff, filed an affidavit of the plaintiff, made in conformity with Sect. 13, Ch. 107 of the Revised Code and the amendment thereof by Ch. 121, Vol. 20, Laws of Delaware, and thereupon asked for a rule upon the defendants to show cause why an order should not be made by the Court directing the defendants to immediately produce the books of the Charles Warner Company, containing the mortar accounts, and other documentary evidence pertinent to the issues and to permit the plaintiff and his attorneys to examine and make copies of the same before trial, and to produce the same at the trial of this cause.

The Court awarded the rule and, after hearing argument, made the same absolute, and ordered the defendants to produce the books and other documentary evidence prayed for, for the examination and inspection of the plaintiff and his counsel before trial, with permission to take copies thereof, and that the defendants produce said books and documentary evidence at the trial.

At the trial, the plaintiff, after he had testified how much sand went into the mortar made by the defendant company from the time of the assignment to it to the date of suit, was asked :   Do you know the cost of that sand to the Charles Warner Company ?   If so, state what the amount is.

*Nields* objected, contending that to ascertain the price of materials used in the mortar business in this cause, current market prices of sand, lime, hair, and such other material as entered into its composition are the prices Charles Warner Company, dealers in lime, hair, etc., is entitled to charge for the sand and other materials.   These prices represent the cost of materials to the mortar business and are proper amounts upon which to calculate profits. *Troy Iron and Nail Factory vs. Corning,* 6 Blatch. 335 ; *Ingersoll vs. Musgrove,* 14 Blatchford 541–544 ; *Mowry vs. Whitney,* 14

Wallace 649, 650, 651; *Tilghman vs. Proctor*, 125 U. S. 51; *Freeman vs. Freeman*, 142 Mass. 100.

*Ball* and *Hayes*, for the plaintiff, contended that under the agreement the plaintiff was entitled to one equal tenth part of all profits which should be derived by the defendants from the use or employment of the patented invention. That to ascertain these profits all the sand that went into the making of the mortar sold by the defendant company must be charged at cost price to them. Whether the sand was bought by them specifically and expressly for this mortar, or that they bought it out of the common fund, they being dealers in sand. 2 Bouvier Law Dict., title "Benefit"; 3 Kent 51; Lindley on Partnership 305; Story on Partnership sect. 175; *Bentley vs. Craven*, 18 Beav. 75; *Dunne vs. English*, L. R. 18 Eq. 524; *Carter vs. Horn*, 1 Eq. Ab. 70; *McDowell et al. vs. Joice et al.*, 36 N. E. Rep. 1012; *The Providence Rubber Co. vs. Goodyear*, 9 Wall. 788; *Freeman vs. Freeman*, 142 Mass. 102; *City of Elizabeth vs. American Nicholson Pavement Co.*, 97 U. S. 124.

That they were *quasi* partners and the profits are to be arrived at under the rules governing partnership. *The People vs. The Savings Bank*, 72 Cal. 199; *Errickson vs. Lott*, 8 Q. B. Div. 414; *Gresham Life Ins. Co. vs. Style*, 24 Q. B. Div. 500; *Cowing vs. Rumley*, 8 Blatch. 36.

LORE, C J. We think this testimony is not admissible. The contention made by the plaintiff is right if their premises were right; that is, if you were to put the Charles Warner Company in the fiduciary relation of an agent to the Charles Warner Company in conjunction with this man, your premises might be right, and the cost price of the sand to them, must be the price. But does any such relation subsist here. Suppose that the Charles Warner Company, at the time engaged in a large business, among other things, in a large sand business, having on hand large quantities of sand which they bought, say for ten cents a load—(whether they had it in hand or bought it afterwards does not matter). They

then for the purpose of manufacturing machine mixed mortar, associated themselves with the plaintiff, Mr. Curry, then the question arises, if they hand over to the new concern 1000 loads of the sand, whether they must furnish it at the cost price to them, or at a fair market price. If they do furnish it at what it cost them, then Mr. Curry being associated with them in the manufacture of mortar, becomes a partner in the profits arising from the sand business, receiving profits from another business. We cannot see that it would be right, unless the plaintiff can show that the sand used was bought by the company specifically for this purpose, and that they were therefore acting in a fiduciary capacity as agents in the mortar transaction. If they were not, you are bound by the market price, not by the cost price. But that does not arise in this case. We think therefore, that this testimony is not admissible.

*Ball* offered in evidence a letter of E. T. Warner, President of the Charles Warner Company to Shortridge and Taylor, patent lawyers of Philadelphia, in which Mr. Warner, in writing about charges offered a quantity of the stock and stated what it was worth.

*Nields* objected to its admission on the ground that a letter between an attorney and client in regard to what should be charged in a certain matter was a confidential communication and should not be brought in court.

LORE, C. J.: We think the letter is admissible. True certain confidential communications between attorney and client are protected. But upon examination the letter in question appears to be an ordinary business letter and not of a privileged character. The objection is not sustained.

John Richardson, treasurer of Charles Warner Co., was asked how much was secured by the company from the sale of mortar from 29th of March, 1892, to the 3rd of February, inclusive, 1894. The witness asked if he could refresh his memory from a memo-

randum, made by him from the books and verified by him by the books. The plaintiff's counsel objected, insisting that he could refresh his memory only by reference to the books of defendant corporation. To this Mr. Nields replied that it would take weeks to go over each item by reference to the books, and as the books referred to were in court and the opposing counsel had the privilege of cross-examination, the reference to the books for each item was not necessary.

LORE, C. J.: Where a memorandum has been made from an examination of the books, in other words, where it is a condensed statement of accounts, the custom has been to allow a witness to refresh his recollections from it. Instead of occupying the time of the Court in going over thousands of entries a clerk or accountant who had examined the entries was permitted to come in and state the results of his examination.

*Ball*, (*Hayes* associated with him), among other prayers for instructions, submitted the following:

That the plaintiff was entitled to receive from the defendant one equal tenth part of the net proceeds of sale to the Warner Process Mortar Company whatever it was, forthwith after its reception by the defendant; and if the jury is satisfied from the evidence in this case that the defendant failed forthwith to pay over to the plaintiff the one equal tenth part of the net proceeds, which it (the defendant) received for said assignment, then the plaintiff is entitled to recover in this action in money the amount of said one equal tenth part of said net proceeds with interest thereon from the time of its reception by the defendant up to the time of the rendition of their verdict; unless the jury are satisfied from the evidence in the case that before this suit was brought the defendant *actually* produced and *unconditionally and absolutely* tendered to the plaintiff the said one equal tenth part of the proceeds received by the defendant from the sale of the said patented invention for making mortar to the said Warner Process Mortar Company, and that such

tender would only prevent interest from running from the time it was made and would not bar this action. *Randall vs. The Chesapeake & Del. Canal Co.*, 1 Harring. 316 ; 2 Greenl. Ev. §§ 600–605 ; 9 Bac. Abr. 315 ; *Sutton vs. Hawkins*, 8 C. & P. 259 ; *Mitchell vs. King*, 6 *id.* 237 ; *Cheminant vs. Thornton*, 2 *id.* 50 ; *Thayer vs. Brackett*, 12 Mass. 450 ; *Lang vs. Meade*, 1 C. & P. 257 ; *Loring vs. Cook*, 3 Pick. 48 ; *Righter vs. Townsend*, 7 D. & R. 119 ; *Hastings vs. Thorley*, 8 C. & P. 573 ; *Brown vs. Gilmore*, 8 Greenl. 97 ; *Wood vs. Hitchcock*, 20 Wend. 47 ; *Bevans vs. Reas*, 5 M. & W. 309 ; *Noyes vs. Wyckoff*, 114 N. Y. 204 ; 25 Am. & Eng. Encyc. of Law, 912.

That if the jury are satisfied from the evidence that the defendant derived any profits from the *use* and *employment* by it, the said defendant, of the *patented invention for making mortar* during the time included between the twenty-ninth day of March, A. D. one thousand eight hundred and ninety-two, and the third day of February, A. D. 1894, then the plaintiff is entitled to recover in this action the equal one-tenth part of the profits derived by the defendant from such *use* and *employment* by the defendant of said patented invention for making mortar during said time, with interest thereon from the third day of February, A. D. 1894; and that the *profits* so derived are to be measured by the advantages gained by the defendant in excess of what it would have obtained by using other means for making mortar already opened to the public and able to produce the same result. *Randall vs. Ches & Del. Canal Co.*, 1 Harr. 174 ; *Houston vs. Spruance*, 4 Harr. 125 ; Leake, Contracts 222 ; *Coupe vs. Weatherhead*, 37 Fed. Rep. 16 ; *Murry vs. Emerson*, 86 *id.* 901 ; *Herring vs. Guage*, 15 Blatch. 124 ; *Nowry vs. Whitney*, 14 Wall. 620 ; *Littlefield vs. Perry*, 88 U. S. 205 ; *McCreary vs. The Penna. Co.*, 141 U. S. 459 ; *Tilghman vs. Proctor*, 125 U. S. 136.

*J. P. Nields*, (*Benj. Nields* associated with him) submitted the following prayers and authorities :

1. That if the jury shall believe that the defendant was not,

at any time prior to March 29th, 1892, engaged in making mortar by the old process, to wit ; with the hoe, but had been engaged for several months prior to that date, and was then engaged in manufacturing mortar by machinery, then the agreement must be taken to have reference to the mortar business as it was conducted by the. defendant at the date of said agreement. *Randall vs. Chesapeake & Del. Canal Co.*, 1 Harring. 269.

2. In estimating the true amount of profits to be derived from the use or employment of said patent, it is necessary to deduct from the total amount received from the sales of mortar, the price of the materials used in making it, also the cost of labor, salaries, clerk hire, rent and interest on floating capital. And the cost of all machinery. tools and apparatus and appliances necessary to produce the mortar under the patent must be ascertained and interest on the capital so invested, as well as the depreciation on said machinery, tools and apparatus must also be deducted. *Freeman vs. Freeman*, 142 Mass. 98 ; *Troy Iron and Nail Factory vs. Corning*, 6 Blatchf. 328 ; *Hitchcock vs. Tremain*, 9 *id.* 385.

If the jury shall believe that when the plaintiff made demand of the defendant for his share of the shares of stock received by the defendant from the Warner Process Mortar Company, for the transfer of said patent, that the said shares of stock were actually at hand and ready to be produced immediately, if they should be accepted, as the whole that was due to said plaintiff, then the same was a legal tender. 2 Greenl. Ev. § 603, n. 5.

That if the jury shall believe that there was no legal tender made of said shares of stock, the plaintiff can only recover the value of said shares at the time of said demand. Cook, Stock and Stockholders, § 581.

LORE, C. J., charging the jury.

Upon the agreement J. Frank Curry, the plaintiff, brought this suit against the Charles Warner Co., the defendant, being an action of covenant to recover damages for what he alleges to be a

failure on the part of the defendant to perform the covenants contained in said agreement.

The plaintiff in his declaration claims:

1. One equal tenth part of all net royalties received by defendant for or on account of the said patented invention.

2. One equal tenth part of the net proceeds of any and all sales, assignments and grants, made by the defendant of said patented invention in whole or in part.

3. One equal tenth part of all profits derived by said defendant from the use or employment by it, of the said patented invention.

As there was no evidence of the receipt of any royalties by the defendant, the plaintiff has abandoned this first part of his claim. You have, therefore, nothing to do with the subject of royalties. This leaves for your consideration the two remaining portions of plaintiff's claim, viz.: The equal tenth part of the net proceeds of sales, assignments and grants of the said patented invention and a tenth part of the profits arising from the use of the patented invention by the defendant.

The parties to this suit have defined their respective rights and duties in the formal sealed instrument above set forth, and both are bound by the terms and meaning thereof. Therefore in determining what their respective rights and duties are, we are to be governed by that instrument.

In respect to the sales of the patent, the defendant expressly agrees, in case of sale by it, of the whole or any part of the said patented invention, *forthwith* to pay to the said plaintiff, one equal tenth part of the net proceeds of any and all such sales, and that the intent of the agreement was that the plaintiff should have the beneficial enjoyment of one equal tenth part of the net proceeds of the sale, assignment or grant of the whole or any part or parts of said patented invention.

Therefore the plaintiff would be entitled to the one tenth part of whatever net proceeds accrued to the said Charles Warner Company, from the grant of the license to the Quaker City Mortar Company, of Philadelphia, to use said invention, and also for the assignment of the patented invention to the Warner Process Mortar Company, of West Virginia.

The plaintiff claims that the net proceeds in the first case was five hundred dollars, and in the second place twenty-two thousand shares of stock of the Warner Process Mortar Company. The defendant, on the other hand, admitting the sales, claims that it received nothing for the first, and that for the second, the net proceeds received for the said assignment, was eleven thousand shares of stock of the said Warner Process Mortar Company, and that eleven hundred of said shares, being the one tenth part thereof, were by it duly tendered to the plaintiff and by him refused.

By the terms of said agreement, the defendant covenanted in case of the sale of said patented invention, *forthwith* to pay said plaintiff, the one equal tenth part of the net proceeds of said sale.

It is admitted by the defendant, that it received the eleven thousand shares of stock on the twentieth day of July, 1892 ; at which time Curry became entitled to receive his eleven hundred shares, under the defendant's express agreement to pay forthwith to him his one tenth part ; and it was the duty of the defendant to make such payment or delivery forthwith, and without any demand on the part of the plaintiff. A tender therefore of the said eleven hundred shares on the twenty-fourth day of October, 1893, one year and four months after the date of the receipt of said net proceeds, even if such tender was in all other respects legal, would not be a compliance with the express terms of the contract to pay forthwith. We therefore say to you that there was in this case no such tender as to interfere with the plaintiff's right to recover on that ground.

On this branch of the subject therefore, the plaintiff would be entitled to recover, the value of the eleven hundred shares of stock, measured by the value on the twentieth day of July, 1892, with

interest from that date.   If the stock at the time had no value, then the plaintiff can recover nothing, as in reaching a verdict in this case in the assessment of damages, you must measure the value in money.   Such value is to be determined by you from the evidence in this case.

We now turn to the plaintiff's claim for profits for the use of said invention.

The contract provides that he shall have the beneficial enjoyment of an equal tenth part of all profits, which shall be derived by the said defendant from the *use* or *employment* of the said patented invention.

The plaintiff claims that the defendant used the said invention in manufacturing mortar in this city, where they operated a large plant for that purpose, from March 29th, 1892, to February 4th, 1894, the period covered by this suit, and before and after that time.   That the saving in material and in the cost of labor by this process was very large, whereby great profit accrued to the defendant, claimed in the declaration to be $30,000.00, and that he is entitled to the one tenth part thereof.

The defendant admits the use of the invention, but contends, on the other hand that there has been no profit whatever, that the costly plant necessary for, and the expenses incident to the making of mortar by this process, made the business a losing rather than a profitable one.

You will observe that the plaintiff covenants for the one equal tenth part of all *profits* which shall be derived by the defendant from the use or employment of the invention; that is, the tenth part of the profits the defendant actually made in the business.

What are the profits, and by what rule are they to be ascertained in contracts of this character?   Upon the solution of this question this branch of the case depends.

The word profits is one in common use, unambiguous and primarily means, acquisition beyond expenditure, or the excess of sale or value received over costs.   Has it any other or peculiar meaning

in this contract? If not, the word is to be construed in its plain, ordinary and familiar sense.

It is conceded that the business in which the defendant used this invention, in fact, was that of manufacturing and selling mortar at their wharves in this city.

That in this business the plaintiff himself was superintendent for several months in the year 1892 and also in 1893. That as an employe of the Charles Warner Company he was familiar with and took part in the business as then and there conducted.

It is further conceded, that this process or invention covered the entire manufacture of the mortar, and that the mortar was the product of this process alone, and of no other, or combination of any other process. That it was not an improvement on, an addition to, or part of any other machine or process used in or about the manufacture of that mortar. That it was in fact an original and exclusive process for mortar making.

Under this condition of facts, we are asked by the plaintiff to instruct you, that profits are to be measured by the advantages gained by the defendant in excess of what it would have obtained, by using other means for making mortar already open to the public, and able to produce the same result; and that the parties in the above recited agreement have agreed that that is to be the measure of profits.

We do not think that the agreement fixes any such measure. It does not say so in terms, or by necessary implication, and as affecting his interest, the words are to be construed most strongly against the plaintiff covenantor. Such interpretation would be contrary to the ordinary acceptance of the word profits, and may not be adopted, unless such meaning is manifest from the language of the agreement.

The true rule, even in cases of infringment of patent, where there is and can be no agreement, is that laid down by Professor William C. Robinson of Yale University, in his admirable work on patents; Vol. 3, Sec. 1862, page 347, note, who says:

" Where the invention is an original invention, or an improve-

Charge.

ment used independently and as an original, the plaintiff is entitled to profits for its use by the defendant *as he has used it,* without regard to anything else he might have used lawfully or unlawfully in the promotion of his business."

The invention used in this case comes within the rule above laid down, as an original invention. It was used by The Charles Warner Company as such and independently of any other in that business. The invention covers the whole of the business. In that business sand, lime, hair and labor were used, and although there might have been a saving in these or any of them, yet as machinery, buildings, capital, clerical labor, porterage and other expenses were necessary in using said invention, the use of these or any of them may be set off against such saving in estimating profits; and as the mortar was made for sale, and there could be no ascertainment of profits until the sale or disposition thereof, the costs of such sale and the losses therein should also be included in such estimate.

The rule applicable to this case therefore would seem to be, that you are to take the total sales of mortar, from these deduct all legitimate costs and charges of the manufacture and sale, and the difference thus ascertained would be the profits or loss. For the plaintiff in ascertaining profits may not take such items of the business as may show gain and reject such as show loss, but must take the entire business where the use of the patent covers the entire business, as in this case. This is the ordinary acceptance of the word profits used in the agreement. It is based on reason and supported by authority. *Freeman vs. Freeman,* 142 Mass. 98; *Troy Iron and Nail Factory vs. Corning,* 6 Blatchf. 328; *Hitchcock vs. Tremain,* 9 *id.* 325.

The cases cited by the plaintiff in favor of his contention, do not in our judgment apply to this case. They are not suits upon a contract, but relate to the measure of damages in cases of infringement of patent rights. They are mainly cases where the invention used is only a part of the machinery or process used in manufacturing and does not cover or relate to the entire business. In such

case the defendant rightfully should pay for the use of the patent whether the general business of which it was only an incident or part was profitable or not.

We have given this part of the subject much consideration, because it is a case of first impression in this Court and we were anxious to reach the true rule of construction. We believe the one above laid down by us to be the true rule.

In conclusion, gentlemen, if you believe that the Charles Warner Company received anything of value, by way of net proceeds of sales or assignment of said patented invention, or any profits derived from the use or employment of the said patent, then Curry is entitled to the one tenth part thereof, and your verdict should be for the plaintiff for such tenth part with interest from the time that he was entitled to receive the same.

If, on the other hand, you should consider that there are no such net proceeds from sales or assignment of the patent or no such profits from the use of the patent, your verdict should be for the defendant, and your conclusion must be based on the preponderance of evidence in the case.

In reaching your conclusions, you may not consider whether the business was managed wisely or unwisely; neither are you to consider what ought to have been made or what might have been made, but only what actually was made; nor are you to go outside of or consider any matter, not within the scope of that agreement. All the parties to the agreement are manifestly intelligent business men. They have made their contract, and by that they must abide, and you are to be governed by it in making up your verdict.

*Jury Disagreed.*