# CASES

## ARGUED AND DETERMINED

IN THE

# SUPREME COURT OF ILLINOIS.

(No. 14615.—Decree affirmed.)

HENRY K. GRONEWOLD, Plaintiff in Error, *vs.* WINNIE
GRONEWOLD *et al.* Defendants in Error.

*Opinion filed June 21, 1922—Rehearing denied October 6, 1922.*

1. DEEDS—*when deed delivered in escrow cannot be set aside—
questions of fact.* Whether or not a deed left with a depositary
has been delivered in escrow or left with the depositary as an agent
is a question of fact, and if the deed was deposited in escrow, to
be kept until the death of the grantor and then delivered to the
grantee, the death of the grantee during the lifetime of the grantor
will not affect the delivery and the deed cannot be set aside at the
suit of the grantor.

2. EVIDENCE—*when communications of an attorney are privi-
leged.* In order that the testimony of an attorney as a witness to
conversations with a party to an action may be excluded on the
ground that they were privileged communications it must appear
that the witness was the attorney of the party and that the com-
munications were made in the course of professional employment,
as there is no privilege where the attorney acts merely as an agent
or attorney in fact.

3. SAME—*whether communication was professional is a ques-
tion of fact for the court.* Whether a communication from a client
to an attorney was made in confidence and in a professional capac-
ity is a question of fact to be determined by the court.

WRIT OF ERROR to the Circuit Court of Hancock county; the Hon. WILLIS F. GRAHAM, Judge, presiding.

HARTZELL, CAVANAGH, MARTIN & HARTZELL, and O'HARRA, O'HARRA & O'HARRA, for plaintiff in error.

SAMUEL NAYLOR, guardian *ad litem,* and FRANK J. PENICK, for defendants in error.

Mr. JUSTICE CARTER delivered the opinion of the court:

This was a bill filed in the circuit court of Hancock county by plaintiff in error, by his next friend, to cancel and set aside a certain deed theretofore executed by him to one of his sons, conveying about 160 acres of land in said county. The cause having been heard before the chancellor the bill was dismissed for want of equity, and the case has been brought to this court for review by writ of error.

Henry K. Gronewold was a married man in 1908, having two or more children, and was the owner of certain land in Hancock county, including the quarter section here in question. On January 8, 1908, he and his wife went to the office of M. P. Berry, in the bank of which he was cashier, at Carthage, the county seat of Hancock county, and talked with him in reference to conveying the quarter section to their son Henry. Berry testified that in answer to their question he told them if they wanted to pass the title to Henry but did not want him to have the land until their death they could do it either by will or by making a deed to the property to be held in escrow until their death; that after talking it over they decided they would rather convey the land by deed; that at his (Berry's) suggestion Alva A. Kelly, an attorney who occupied an office in the next room to Berry's office in the building, drew the deed in accordance with Berry's talk with Gronewold and his wife and they executed the deed before Kelly, and then, in accordance with the talk between them and Berry,

the deed was turned over to Berry, to be put in an envelope
and kept by him in the bank. Berry testified that he had
already told the Gronewolds that if the deed was put in
escrow they could not get it back afterwards, and that in
accordance with his conversation with them he wrote on
the envelope in which the deed was inclosed the following
inscription: "This deed from Henry K. Gronewold and
wife to Henry H. Gronewold for the N. W. ¼ section 26,
T. 4 N. R. west 4th P. M. Hancock county, Illinois, to be
left in escrow with M. P. Berry, to be by him delivered
to the grantee, Henry H. Gronewold, upon the death of
said Henry K. Gronewold and Hilka Gronewold, his wife,
and not before." This inscription and Berry's testimony
in regard thereto were objected to but admitted by the trial
court over objection. The evidence also shows there was
written upon the envelope in which this deed was placed,
in Berry's handwriting, the further writing: "Other two
deeds left February 25, 1908, on same conditions.—M. P."
The evidence does not show that the son Henry, the grantee
in the deed, knew anything about the drawing of this deed
or its being given to Berry or of the envelope being so in-
scribed. It appears from the record that on January 4,
1919, the son Henry departed this life intestate, leaving his
widow, Winnie Gronewold, and one minor child, Mary, as
his only heirs. The widow and minor child, with the ad-
ministrator of the estate and the guardian of the child,
were made parties defendant to this bill. Plaintiff in er-
ror's wife died before the death of her son Henry. The
evidence also tends to show that no effort was made dur-
ing the son's life by plaintiff in error, or persons represent-
ing him, to obtain the deed in question from Berry, but
that after the son's death the father, or persons represent-
ing him, asked Berry to deliver up the deed, but Berry,
knowing that there was a dispute as to the effect of the
conveyance left with him, refused to give it up. Berry was
made a party to this bill and filed an answer, in which he

admitted that he had the deed but stated that it was left with him in escrow; that he was ready and willing to deliver the deed to the person or persons entitled to it but was desirous of protecting all his rights in so doing, and therefore brought it into court to be delivered as the court might direct. At the time of the trial the father was seventy-seven years old and apparently not capable of transacting his own business at all times, and this proceeding was brought by his son John, as his next friend, to cancel the deed. There is no evidence showing, and there is no point made, that the father was not capable of making the deed when it was executed, in 1908.

It is strongly insisted by counsel for plaintiff in error that this deed could not be held in escrow by Berry as he was the attorney, and therefore the agent, of plaintiff in error and his wife; and even if it is not true that it was delivered to Berry as the agent and attorney of plaintiff in error, there is no lawful proof in the record showing that the deed was left with Berry in escrow, as the testimony he gave as to what took place at the time the deed was drafted and the inscription placed on the envelope was by Berry himself, and the conversation covered by his testimony in that regard was, under the settled rules of law, a privileged communication, and was improperly received in evidence over the objection of counsel for plaintiff in error. It should be stated that the evidence in the record in addition to Berry's testimony tends to show that plaintiff in error said to certain persons that he had drawn and executed a deed and left it with Berry conveying the property to his son Henry, to be delivered by Berry after the death of the grantors. The evidence also shows that in August, 1916, plaintiff in error rented the premises in question to Henry for five years, commencing March 1, 1917, for one dollar an acre per year.

Berry was put on the stand more than once. Reading all his testimony, we think it is clear that he practiced law

from the time he was admitted as an attorney and counselor at law, in 1877 or 1878, in partnership with his brother, former State senator Orville F. Berry, in Carthage, until January, 1902, when he retired from practice and became an officer of the bank with which he was connected when this deed was executed; that at the time he became connected with the bank he sold his interest in the law partnership and the law library to his brother; that after he became an officer of the bank he gave occasional legal advice to the bank's customers, perhaps drawing some wills and settling some estates, and also acted as guardian *ad litem* when appointed by the court, but that he did not actively practice law or hold himself out as a practicing attorney after he had gone into the bank, although his name appears to have been in the printed list of the members of the bar of that county; that the elder Gronewold had been a client of the old firm of Berry & Berry; that after Berry went into the bank he advised Gronewold and made arrangements with him as to certain loans which Gronewold had made through the bank, but that he had never been employed or paid a fee by him as an attorney in connection with the loans, and that he was not the attorney of Gronewold, or acting for him as such, at the time the deed here in question was executed.

Perhaps the first question to be considered is whether or not the deed in question was intended by the grantors to be left with Berry as an escrow, to be delivered after their death to the grantee, or whether it was left with Berry for safe keeping, so that the grantors could withdraw it at any time. The only direct and definite testimony in the record on that point is that of Berry himself. He testified that he told Gronewold and his wife that if the deed was left with him in escrow they could not get it. It is clear from a reading of the inscription placed by Berry on the envelope in which the deed was contained that his understanding of the agreement was that the deed was held in escrow and

could not be delivered to the original grantors. The law is, that "it is essential to an escrow that the instrument must be delivered to a stranger or third person, and the phrase 'stranger' or 'third person,' as used in the definitions of escrow, means a stranger to the instrument, as not being a party to it, or a person so free from any personal or legal identity with the parties to the instrument as to leave him free to discharge his duty as a depositary to both parties without involving a breach of duty to either. The rule is well established that a deed cannot be delivered in escrow to the grantee." (10 R. C. L. 629.) In a note to *Case Threshing Machine Co. v. Barnes,* 19 Ann. Cas. (Ky.) 246, it is stated on page 250 that "the rule supported without qualification by many of the earlier authorities was, that to constitute the delivery of an instrument in escrow the depositary of the instrument must be a stranger to the parties; that if he was the general agent of the person to be benefited by the instrument there was no escrow, and parol evidence was inadmissible to show that the delivery was in escrow." Later in the same note it is stated, with citation of numerous authorities, that "it has now become the settled rule in most jurisdictions that a general agent of the grantee, obligee or payee of an instrument is not incapacitated from acting as depositary of the instrument but becomes the agent of both parties for the purposes of the escrow." The rule laid down in this note and by authorities cited is substantially laid down in 1 Devlin on Real Estate, (3d ed.) sec. 316. Whether an instrument has been deposited as an escrow or delivered as a deed is a question of fact for the jury if the case is considered before a jury, and for the court if it be decided by the court. (21 Corpus Juris, 896.)

Before stating our final conclusion on this point it is advisable to discuss the other point raised in this same connection,—that the matters testified to by Berry concerned confidential communications, as he acted as the attorney of

the elder Gronewold at the time the deed was executed, in advising him as to what was necessary to be done. In order that the testimony of a witness as to conversations with a party to an action may be excluded on the ground that the witness is an attorney at law and that the communications were confidential, it must appear that he was the attorney of the party "and that the communications were made in the course of such professional employment. In other words, to exclude declarations as communications to counsel or made with a view to employment, their root in the relation or contemplated relation of client and attorney must be manifest. They must be the offspring of the relation, present or prospective, not of taking or expecting to take the fruits of such a relation without forming it. Mere casual conversations with an attorney, and legal advice given in the course thereof, are not entitled to the benefit of the privilege; and this is true though the conversations have reference to matters about which it is probable there will be litigation. To tax a lawyer's courtesy or liberality for advice or services is not to employ him." (28 R. C. L. 553, and authorities cited.) Whether a communication from a client to an attorney was made in confidence is a question of fact to be determined by the court. In a note to *Collins* v. *Hoffman,* Ann. Cas. 1913A, 1, the rule is laid down on page 9 that although an attorney on a trial disclaims that he is acting in a professional capacity, nevertheless that is a question for the court to determine from the facts. "In order that the rule of privilege may apply, the relation of attorney and client must actually exist between the parties at the time when the communication is made or the information acquired, or at least the party making the communication must have believed that such relation existed;" and so "an attorney who acted as a mere scrivener in preparing a deed, will or other instrument in accordance with instructions given to him may testify as to the transaction," but there is no privilege "as to communications in reference to a matter in which the

304—2

attorney acts, not in his professional capacity but merely as an agent or attorney in fact, depositary or abstracter of titles." (40 Cyc. 2363-2365.) This court in *Champion* v. *McCarthy,* 228 Ill. 87, in discussing the question of privileged communications, said (p. 98) : "In order to render a communication between attorney and client privileged it must relate to some matter about which the client is seeking advice, or be made in order to put the attorney in possession of information supposed to be necessary to enable him to properly and intelligently serve his client. Where the transaction between the attorney and client is the preparation of a deed or a contract in accordance with the directions of a client and no legal advice is asked or required, the reasons or motives moving the client to make the deed or contract, if stated to the attorney, are not privileged." In discussing privileged communications it was stated in *Blackburn* v. *Crawfords,* 70 U. S. 175, on page 192 : "The foundation of the rule is not difficult to discover. It is not, as has sometimes been said, on account of any particular importance which the law attributes to the business of legal professors, * * * but it is out of regard to the interests of justice which cannot be upholden, and to the administration of justice which cannot go on, without the aid of men skilled in jurisprudence, in the practice of courts, and in those matters affecting the rights and obligations which form the subject of all judicial proceedings. If the privilege did not exist at all everyone would be thrown upon his own legal resources. Deprived of all professional assistance a man would not venture to consult any skillful person or would only dare to tell his counsel half his case."

We think it is manifest from the evidence in the record that beyond doubt it was intended by both the elder Gronewold and his wife and Berry that the deed in question was to be held by Berry not as the general or special agent of the Gronewolds but in escrow, to be delivered to the grantee after the grantors' death, and we think it is clear, under the

authorities, that it was not intended by either that Berry was acting as the attorney for the elder Gronewold at the time he advised as to the deed, which was drawn by attorney Kelly. The elder Gronewold, in our judgment, on this record, went to Berry principally because Berry was accustomed, as a banker, to handling his business in making loans, the same as he would have gone to some other banker of experience who had never been a practicing attorney. On this record it seems evident that the Gronewolds did not employ Berry as an attorney, but advised with him as a friend with wide experience in business matters of this character, and what he did was done not as an attorney. The chancellor heard all the witnesses and was in a far better position to judge of the character of their testimony in this regard than is the reviewing court. Under the authorities already cited we think it is a question of fact for the court not only as to what relation Berry bore to this deed but also whether or not he was acting as the attorney for the elder Gronewold at the time this deed was executed. On both of these points, from the evidence in the record before us, we are satisfied that the trial court did not err in holding that Berry held the deed in question in escrow, and that he was not acting as an attorney at the time the deed was drafted and executed. We do not consider the fact that Berry was unable to remember what became of the other two deeds that were placed in the same envelope with the deed here in question seriously affects the decision as to the effect of this deed. If he wrongly delivered up the other two deeds, if they were left with him in escrow, that does not in any way affect the legal conclusion as to the delivery of this deed, delivered to him to be held in escrow.

We find no reversible error in the record, and the decree of the circuit court will be affirmed.

*Decree affirmed.*