UNITED STATES v. VEHICULAR PARKING, Limited, et al.

Civ. No. 259.

District Court, D. Delaware.

Dec. 3, 1943.

752

See, also, 52 F.Supp. 749.

Stewart Lynch, U. S. Atty., of Wilmington, Del., Ernest S. Meyers, Sp. Asst. to the Atty. Gen., and E. H. Harsha, Sp. Atty., of Washington, D. C., for the United States.

Samuel E. Darby, Jr. (of Darby & Darby), of New York City, and Wm. S. Potter (of Southerland, Berl & Potter), of Wilmington, Del., for defendants Vehicular Parking, Limited, and others.

Edwin D. Steel, Jr. (of Morris, Steel & Nichols), of Wilmington, Del., for defendants Dual Parking Meter Co. and others.

LEAHY, District Judge.

I. Defendants are charged with violating Secs. 1, 2, and 3 of the Sherman Anti-Trust Act, 15 U.S.C.A. §§ 1, 2, and 3. In an effort to prove its case, government-plaintiff offered a number of exhibits. Defendants' objections to their admissibility constitute the matter for consideration. The Vehicular Group [1] object to PX. Nos. 2, 4, 13, 25, 27, 30, 32, 33, 34, 35, 36, 38, 39, 40, 43, 48, 52, 54, 56, 57, 68, 76, 90, 102, 116, 127, 128, 131, 133, 134, 135, 136, 137, 138, 139, 140, 141, 142, 149, 150, 151, 153, 157, 160, 161, 166, 174, 186, on the ground that these writings represent privileged com-

---

[1] Defendants Vehicular Parking, Ltd., The Karpark Corporation, Peerless Oil & Gas Company, Vernon F. Taylor, John Howard Joynt, Walter J. Herschede, Guy Kelcey and E. D. Timberlake.

munications between attorney (in this case John Howard Joynt, Esquire, an individual defendant) and client. To pass on the question, I read, examined, and attempted to analyze the government's exhibits, Nos. 1 to 199, inclusive. Such exhibits demonstrably may be formulated into the following categories: (i) PX. 2 to 24 were offered to show the formation of the alleged monopoly; (ii) PX. 25 to 68 were offered to show the purposes and objects of the combination; (iii) PX. 69 to 124 were said to indicate the operation of the conspiracy; (iv) PX. 125 to 152 were offered to establish the use of the patents in the pool to mask the illegality of defendants' activities; (v) PX. 153 to 181 were said to indicate the utilization of a threat of infringement suits against competitors; and (vi) PX. 182 to 195 were said to disclose the conscious guilt on the part of defendants as to operations under the various license agreements.

Both plaintiff and defendant were given special opportunity to adduce evidence on the manner by which plaintiff came into possession of the writings and whether, if privilege existed, it had been waived. After this particular hearing, the parties, evidently dispensing with the testimony adduced,[2] filed a stipulation agreeing that all the specified writings objected to "were voluntarily made available, for inspection and return, to a member of the Anti-trust Division of the Department of Justice before or on August 19, 1941, by Mr. John Howard Joynt"; and that subsequently all of the writings also "were produced pursuant to subpoenas on or after November 13, 1941 by the Vehicular group of defendants before the Federal Grand Jury sitting in the District of Columbia."

II. In support of their objection, defendants argue that Joynt's services were at all times exclusively legal in nature and that, specifically, in the corporate gestative stages, all affairs of the subject companies to which his services were directed were purely legal in character. Mere examination of the disputed exhibits refutes this assertion. Without pausing to discuss each of the 197 exhibits seriatim, I am satisfied two excerpts are typical. PX. 4, a letter from Joynt to Broussard, Vice-President of Parkrite Corporation, dated April 23, 1937 states: "I have given attention to the proposals found in your letters of April 12 and 17, 1937, respecting the form of assignment from Parkrite to Vehicular Parking, Ltd. In order that a price structure may be set up in this country on parking meters, it is absolutely essential that all important manufacturers be brought under a single organization set up to control prices. This is the function of Vehicular Parking, Ltd. There can be no exceptions to its control." Again, PX. 90, a letter from Joynt to the individual defendant Herschede, dated March 24, 1941, exposes that "Mr. Magee just telephoned me from Oklahoma making a further request that the Vehicular agreement be relaxed to permit Dual to give a $25.50 trade-in allowance on the meters at Knoxville, Tennessee. I refused for the reason that it would set a bad precedent which would be followed by every city in the country. I know you are in accord with my thoughts on this, since it is something which we discussed very thoroughly on the telephone this afternoon prior to the phone call from Magee." This is more than attorney-talk. It is big—as well as basic—business diction.

The privileges contended for do not exist unless the attorney was acting in his professional capacity. With the exception of PX. 39, 48, 161 and 186, the communications in question indicate Joynt was advising on matters of business. Privilege is not accorded to such communications.[3] Moreover, it appears that while Joynt was attorney for one of the corporate defendants he was at the same time one of its directors, acting as one of its primary promoters and serving throughout as one of its general business managers. His communications, voiced in such non-advocate roles, prevent the claim of privilege.[4] In fact, it appears the offices and principal place of business of the primary defendant were located in the same suite where the attorney had his chambers in Washing-

---

[2] I have, nevertheless, considered this testimony, because it spot-lights the attorney—client privilege.

[3] Hatton v. Robinson, 14 Pick., Massachusetts, 416, 25 Am.Dec. 415; Gronewold v. Gronewold, 304 Ill. 11, 136 N.E. 489; Howe v. Stuart, 68 Misc. 352, 123 N.Y.S. 971; Lifschitz v. O'Brien, 143 App.Div. 180, 127 N.Y.S. 1091; Turner v. Turner, 123 Ga. 5, 50 S.E. 969, 107 Am.St.Rep. 76; Estate of Huffman, 132 Mo.App. 44, 111 S.W. 848.

[4] In re Fisher, D.C., 51 F.2d 424.

ton, D.C. In this setting, his communications involving business, rather than legal, advice are, therefore, not privileged.[5] As active business manager of defendant Vehicular, he did not, I suspect, wear his lawyer suit when he taxied over to the Department of Justice building and voluntarily turned over to the government the exhibits in controversy as well as the many writings concerning the Vehicular Group of defendants to which Joynt was neither the sender nor receiver. In short, I conclude, when he made delivery of the documents to the Anti-trust Division, he did so as the agent of the corporations involved; patently not as their legal adviser.

■ III. PX. 41, 42, 51, 53, 182, 183, 184, 185, 188, 189, 190, 195, 196 and 197 are objected to: grounds, immateriality and irrelevancy. To read these papers in view of the issues raised by the pleadings, it is manifest they are material to the monopoly, combination and conspiracy allegations found in the complaint. To isolate an instance: they bear on the purpose, for which the various license agreements were made, and they relate to acts done by defendants in carrying through those agreements. In ruling on this group of exhibits I look to the provisions of Rule 43 (a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, which, inter alia, provide: "* * * All evidence shall be admitted which is admissible under the statutes of the United States, or under the rules of evidence heretofore applied in the courts of the United States on the hearing of suits in equity, or under the rules of evidence applied in the courts of general jurisdiction of the state in which the United States court is held. In any case, the statute or rule which favors the reception of the evidence governs and the evidence shall be presented according to the most convenient method prescribed in any of the statutes or rules to which reference is herein made. * * *" Moore (3 Moore, Federal Practice, § 43.-01, p. 3063) summarizes the standards for admissibility of evidence under the new rules when he writes: "But it is subdivision (a) of Rule 43 that revolutionizes federal evidence, and in general places admissibility upon the sole basis of relevency and materiality." This rule is especially applicable to conspiracy cases— here, to restrain a monopolized trade in the parking meter industry—because it simply crystallizes established law, e.g., liberality has always been accorded to the admission of evidence in cases where conspiracy issues are present.[6]

■ IV. Objections were made to certain of plaintiff's exhibits on the ground such exhibits are not binding upon particular defendants. This type of objection is bottomed on the principle that statements made by a person prior to the time he joins a conspiracy can not bind any other person who is then a conspirator or who becomes a conspirator after the statements were made; or, statements made by a party to the conspiracy can not bind persons who join the conspiracy subsequent to the time such statements were made, in the absence of some express or tacit approval of them. In so far as the proofs before me disclose, defendant corporate licensees joined the alleged conspiracy during the year 1940, when they indulged in license agreements. They say no statements made by them prior to 1940 should be binding on them. Under the co-conspirator rule, declarations of one conspirator in furtherance of the illegal combination are admissible against all conspirators. The rationale of the rule is that each co-conspirator acts on behalf of all in furtherance of the conspiracy.[7] In Hitchman Coal & Coke Co. v. Mitchell, 245 U.S. 229, 38 S.Ct. 65, 72, 62 L.Ed. 260, L.R. A. 1918C, 497, Ann.Cas.1918B, 461, the Supreme Court said: "In order that the declarations and conduct of third parties may be admissible in such a case, it is necessary to show by independent evidence that there was a combination between them and defendants, but it is not necessary to show by independent evidence that the combination

[5] Curry v. Charles Warner Co., 16 Del. 98, 42 A. 425.

[6] Clune v. United States, 159 U.S. 590, 16 S.Ct. 125, 40 L.Ed. 269; Davis v. United States, 6 Cir., 107 F. 753; United States v. Swift & Co., 196 U.S. 375, 376, 25 S.Ct. 276, 49 L.Ed. 518; Eastern States Lumber Association v. United States, 234 U.S. 600, 34 S.Ct. 951, 58 L.Ed. 1490, L. R.A.1915A, 788; Interstate Circuit v. United States, 306 U.S. 208, 59 S.Ct. 467, 83 L.Ed. 610; United States v. Kissel, 218 U.S. 601, 31 S.Ct. 124, 54 L.Ed. 1168.

[7] American Fur Company v. United States, 2 Pet. 358, 7 L.Ed. 450; Delaney v. United States, 263 U.S. 586, 44 S.Ct. 206, 68 L.Ed. 462; Gambino v. United States, 3 Cir., 108 F.2d 140; Vitagraph, Inc., v. Perelman, 3 Cir., 95 F.2d 142.

was criminal or otherwise unlawful. The element of illegality may be shown by the declarations themselves." Admittedly, a prima facie showing is required as to the existence of the concerted action of the parties before the foregoing rules are operative.

 The government's documentary proofs offered meet this test, in view of the defendants' contract and license agreements, and the action taken by them in furtherance of the alleged conspiracy. I reach this conclusion because I am aware of the rule that a conspirator's connection with the illegal combination need not be proved directly, as circumstantial evidence is, in most cases, the only evidence available.[8] Thus, once a prima facie case has been disclosed, the admissions of every coconspirator, whether a party to the cause or not, and regardless of the time of his entrance into the combination, are admissible.[9] His declaration need not be in furtherance of the conspiracy. It suffices if the declarant's statement relates merely to the purposes of the alleged combination.[10]

 V. Objections were made as to authenticity and genuineness of particular writings. Certain defendants stipulated, admitting authenticity. It seems to me nonstipulating defendants are bound by these admissions, until they disprove authenticity. Absent such proof, at this time, I shall admit the documents, reserving to the objectors a later motion to strike.

 VI. Three individual defendants object to introduction of the government's documentary proof on the ground it deprives them of the right to cross-examine concerning the contents of the writings. This objection is meritless. These defendants are at liberty to offer evidence to controvert any or all statements contained in plaintiff's exhibits. This circuit recognizes that documentary proof may be offered and submitted in lieu of oral testimony in anti-trust cases.[11]

When trial resumes, I shall state to the reporter that plaintiff's exhibits Nos. 1 to 197 are admitted, over objection.

---

[8] United States v. Harrison, 3 Cir., 121 F.2d 930.

[9] Weinstein v. United States, 1 Cir., 11 F.2d 505.

[10] International Indemnity Company v. Lehman, 7 Cir., 28 F.2d 1, certiorari denied, 278 U.S. 648, 49 S.Ct. 83, 73 L.Ed. 561; Connecticut Mutual Life Ins. Co. v. Hillmon, 188 U.S. 208, 23 S.Ct. 294, 47 L.Ed. 446.

[11] See United States v. Pullman Co. et al., D.C.E.D.Pa., 50 F.Supp. 123, and United States v. General Electric Co., et al., Civil Action No. 1364, now pending in the district court for the District of New Jersey, both anti-trust cases.