Simmet, Appellant, *v.* Graeber et al., Executors.

Argued January 7, 1929. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*Arthur E. Weil,* with him *Edgar W. Lank* and *Albert L. Moise,* for appellant.—The contention of appellant is that when the priest received the note the second time, with full knowledge of its character, there was a valid delivery in escrow, which became absolute on the·death of Frederick R. Graeber: Murphey v. Greybill, 34 Pa. Superior Ct. 339.

A promissory note may be delivered in escrow.

Death of grantor or promisor may be a contingency on which escrow takes effect: Wagoner's Est., 174 Pa.

558; Stephens v. Rinehart, 72 Pa. 434; Landon v. Brown, 160 Pa. 538.

After the written instrument has been delivered to the depository in escrow, to be delivered by him to the grantee or obligee upon performance of a condition or happening of a contingency, the rights of the parties are fixed and are determined solely by the question whether or not the condition is performed or the contingency happens: Kreuer v. Bank, 276 Pa. 201.

*William A. Gray,* for appellees.—Under the facts of this case the priest must be regarded as the agent of the maker only; and therefore, there is no escrow and no gift: Fross's App., 105 Pa. 258, 267; Clapper v. Frederick, 199 Pa. 609; Walsh's App., 122 Pa. 177.

OPINION BY MR. JUSTICE FRAZER, February 11, 1929:

Appellant contends the facts in this case establish her claim that a valid delivery was made to her of a promissory note, alleged to have been held in escrow, and of which she is the payee. The facts are few and not disputed. Frederick R. Graeber, maker of the note, and against whose executors this action is brought, when about to enter a hospital to undergo an operation, requested his spiritual adviser, a Catholic priest, to take charge of an envelope. At the trial the priest was called as a witness for the defense and related the interview as follows: "On the day before Mr. Graeber was taken to the hospital for an operation, he sent for me and asked me to do him a favor, and he took an envelope from under his pillow and handed it to me and asked me to keep that until he would return from the hospital, but if he should die, I should give it to Margaret Simmet; but, he said 'If I recover, by all means return it to me.'" The witness assented to the request, but upon arriving home and examining the contents of the unsealed envelope, he found it contained the note here in question. He at once returned to Graeber, told him he

refused to go on with the matter, saying he "would not handle it," and returned the envelope and note to Graeber. After unsuccessful entreaty by the latter, the witness suggested he deliver it to Graeber's brother, to which Graeber consented. The witness accordingly sent the envelope to the brother, who returned it to the priest, stating that he "did not care to handle it." Two or three days subsequent to sending the note to the brother, Graeber died in the hospital to which he had been taken. Later the priest delivered the envelope and instrument, to his own attorney, who in turn sent the note to Margaret Simmet, the plaintiff. Upon refusal of Graeber's executors to pay the obligation, an action in assumpsit was instituted by plaintiff to recover the sum it specified. At the trial plaintiff put the note in evidence and rested. The facts as stated above were proved by defendants, and, upon motion of counsel, the court directed a verdict in their favor. A motion of plaintiff for judgment n. o. v. was subsequently refused, and plaintiff appealed.

Counsel for plaintiff claims a valid delivery in escrow of the note in question, the priest being the depository. They concede there was no escrow created and consequently no delivery made at the time the witness first accepted and then returned the instrument to the maker. The clergyman could not of course be compelled to act as a depository without knowing the nature and extent of his charge. Plaintiff contends however that when the priest proposed to Graeber that he deliver the note to the latter's brother, and retained it for such purpose, he then had full knowledge that the paper could be of benefit to plaintiff, and "shows that the priest was acting for her." We find no facts in the case to support such claim. The witness says nothing as to the knowledge he had in that respect, and we find the subsequent proceedings devoid of elements essentially constituting an escrow contract. Where an instrument has been placed in escrow, the transaction constitutes a

contract between the parties: 11 Am. & Eng. Enc. of Law (2d ed.) 244. There certainly was at no time an agreement between the maker of the note and the payee to place it in escrow. So far as the record of the case reveals, plaintiff was not informed, during the entire transaction, of Graeber's arrangement with the priest, nor of the subsequent proceedings of the latter with regard to the note. He consequently at no time acted as her representative in any capacity. He was under no obligation to deliver the instrument to her at any stage of the entire affair.

The note was given by the priest to the brother of Graeber as a result of the proposition made by the former and the acquiescence therein of Graeber (the maker) himself. In carrying out that suggestion the priest was not acting under directions from the maker of the note. He was doing only what he himself had elected to do, and to which Graeber agreed. A mere direction by the depositor to the depository will not constitute an escrow contract, particularly if the eventual transferee is not a party to the transaction. But here, as we have just said, there were no directions. The giving of the note to the brother was merely completing a suggestion made by the priest to Graeber. At most, the former constituted himself an agent of the latter for the sole purpose of depositing the note into the hands of a person other than the payee. Graeber accepted his services in that capacity. The suggestion was fulfilled by delivery of the paper to the brother; and, as the priest's testimony indicates, he was, upon its return to him, in a quandary as to the action he should take. Graeber, the maker, being dead and his brother refusing to become a party to the transaction, he rightly assumed he was in no position to determine to whom the paper belonged and, as a solution of the situation, delivered it to his own attorney, depending upon the latter's judgment as to its proper disposition. The attorney in turn forwarded it to plaintiff.

It is urged by plaintiff's counsel that at the time the priest "agreed to deliver the note to George Graeber [the brother], it was for plaintiff's real and ultimate benefit." The argument has no application and is wholly without force. The witness nowhere says that such was his purpose; and we may not attempt to read his mind and express in words what he himself did not say. The only conclusion allowable from his testimony is that, after receiving the note back from the brother, he found himself again in possession of a valuable paper that belonged to some person, but to whom he did not know; this situation being, in his opinion, a matter of legal importance, he delivered the paper to his own attorney, in whom he had confidence, as being one who would know the proper disposition to be made of it.

We find it impossible to discover anywhere in this entire transaction any element tending to establish an escrow and legal delivery to plaintiff of the note in question. Upon the priest's refusing to act for Graeber in the first instance, there was no further attempt on the part of either to put the obligation in escrow and, by the death of Graeber, whatever agency relations existed between them were revoked and there ended.

Judgment affirmed.