L.C.S. Colliery, Inc. et al., Appellants, *v.* Mack.

Argued March 14, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*S. R. DiFrancesco, Sr.*, with him *Edward T. Stibich, DiFrancesco & DiFrancesco*, and *Weimer, Bennet, Jones & Stibich*, for appellants.

*John S. Fisher*, for appellee.

OPINION BY MR. JUSTICE O'BRIEN, April 20, 1972:

The Crichton Coal and Coke Company was the lessee and L.C.S. Colliery, Inc., and Sixtus Campdon, appellants, were the lessors in a lease dated November 13, 1957. Under the terms of the lease, Crichton, after acknowledging certain debts owing to L.C.S. for the purchase of mining equipment and the previous mining of certain coal from the premises, agreed to pay the lessors certain royalties on a monthly basis for the coal still in the premises, with the payments to go first to extinguishment of the debt, after which time Crichton was to pay a royalty of ten cents per net ton for

the remaining term of the lease or until the prior exhaustion of the coal. The lease also contained the following provision: "In the event that the estimated coal in place shall have been paid for prior to the termination of this lease agreement, then a rental in the amount of one hundred dollars ($100.00) per month plus all property taxes shall be paid by CRICHTON until the agreement is terminated."

On June 21, 1966, Joseph N. Mack, appellee, who was general counsel to Crichton, wrote appellants a letter containing the following statement: "Our advance royalties now total $8,400.00 which is more than sufficient to pay for the tonnage estimated to remain in place. We are, therefore, entitled under our lease above indicated, to pay the sum of $100.00 per month to remain until November of 1978, and to remain until such time as we have mined and removed the remaining coal which we have already paid for and which remains in the tracts indicated all of which is in accordance with the above indicated lease agreement."

Mr. Mack followed this letter with another letter dated August 16, 1966:

"Enclosed herewith please find photocopy of an account established for and on behalf of L.C.S. Colliery and/or Sixtus Campdon for rentals due under a lease agreement between L.C.S. Colliery and Sixtus Campdon, said lease agreement being 11/13/57.

"These rentals are being deposited for your account in view of the fact that you have refused to accept the same and have returned checks of Crichton Coal & Coke Company to this date. This amount will be turned over to you at any time you so desire in cash or by certified check.

"It is our intention to make further deposits in this account as rental becomes due until such time as your corporation shall accept rental checks or until

such time as the matter is determined by the Courts of Indiana County."

The last notice received by appellants of a deposit made by appellee was on October 18, 1966, and at that time there was $600 in the account. According to appellants, Crichton Coal continued to make monthly deposits of $100 in the account until the company went bankrupt.

At that time, appellants brought an action in equity seeking an accounting to them by Mack for all of the payments received by him from Crichton for their account.

Appellee filed preliminary objections to the complaint, stating (1) that appellants had a full, adequate and complete remedy at law, and (2) that the complaint did not state a cause of action. The chancellor found for appellee on his preliminary objections and dismissed the complaint. From that decree appellants bring this appeal.

The chancellor found, and the parties agree, that since there was no contract between appellants and appellee, appellants do not have an adequate remedy at law. However, to say this does not mean that appellants automatically have a cause of action in equity. In arguing that they do have a cause of action in equity, appellants rely on §342(3) of the Restatement of Agency 2d, which states: "(3) If an agent receives money in trust from the principal for the benefit of another, the agent is liable as a trustee to the other."

However, the chancellor found no allegation in the complaint that when Joseph Mack received money from Crichton to establish the account, he was acting as trustee of the money for appellants' benefit. As the comment to Subsection 3 of §342 states: "Although an agent receives money from his principal for payment to another and, by implication or otherwise, promises

the principal to pay the other, he does not ordinarily become trustee of the money, even though directed to pay over the specific money. . . . An agent who receives money from his principal to pay a creditor may agree with the creditor to hold it for him, or become a debtor to him, in which case the principal may be discharged from liability."

In order for appellants to establish that Mack was holding the money in trust for them, they would have to show that there was an agreement by them with Mack or with Crichton by the terms of which they agreed to look only to the account for satisfaction of Crichton's liability under the lease. See *Simmet v. Graeber,* 295 Pa. 510, 145 A. 528 (1929).

Their complaint fails to allege such an agreement. Instead, they allege only that they were notified of the establishment of an account and that they "acquiesced in the arrangement," presumably by not trying to stop it. They did not, however, accept any checks nor did they ever furnish any instructions to Mack to pay the money over to them as they had been asked to do by Mack in his letter of August 16, 1966.

In the absence of an agreement, the general rule applies: "(1) An agent who receives money or other thing from his principal to pay or transfer to another person is not thereby liable to the other." Restatement of Agency 2d, §342(1).

Consequently, appellants' complaint was properly dismissed for failure to state a cause of action.

Decree affirmed, costs to be borne by appellants.

Mr. Chief Justice JONES concurs in the result.