JOSHUA G. HUBBARD *vs.* EVERARD H. GREELEY, and others.

Hancock.    Announced at July term, 1891, Western Law District.    Opinion March 24, 1892.

*Deed.   Delivery.   Escrow.   Attorney.*

A deed cannot be delivered directly to the grantee himself, or to his agent or attorney, to be held as an escrow.

Delivery to the attorney as such is equivalent to a delivery to the grantee himself, and it is not competent for the grantor, or those claiming under him by a subsequent conveyance, to show by oral evidence that a condition was annexed to the delivery, for the non-performance of which the deed never became operative.

The record of a deed, the original being lost, describes a parcel, with metes and bounds beginning thus: "undivided half of one and also one other parcel of land," &c. There was evidence that the words "undivided half of" were interlined. *Held:* That one undivided half of the parcel was conveyed by the deed, and not the whole.

ON REPORT.

This was a real action for the recovery of a tract of land on Mt. Desert Island containing over forty-six acres, and called the Smallidge lot. Writ dated February 28, 1888. The defendants claimed title by a regular chain of deeds, all seasonably recorded. Among other deeds they introduced one from Seavy and Clark to T. and R. W. Boyd, dated January 26, 1878, and recorded July 15, 1878, which the plaintiff claimed had been placed in escrow and was improperly delivered.

The plaintiff claimed title from deed of the Boyds, dated May 27, 1876, recorded September 24, 1887; deed of Seavy to Crowell dated September 15, 1874, but not recorded; deed of Clark and Crowell to himself, dated October 1, 1878, recorded August 25, 1879; and deed from Seavy to himself dated September 6, 1887, recorded September 9, 1887.

It was admitted that the premises in 1872, belonged to one Swazey, under whom both parties claimed title. By *mesne* conveyances the title stood February 12, 1874, in Seavy, Clark and Boyds, one third each. The principal issue between the parties turned on the question whether the plaintiff could properly show that the deed of Clark and Seavy, dated January 26, 1878, had been placed in escrow and was improperly delivered. The defendants claiming that they were *bona fide* purchasers, for value and without notice, objected to the admission of the evidence offered by the plaintiff on this point. The facts are found in the opinion.

A question of construction of this deed also arose, which is stated in the head note, relating to the quantity of interest in the land conveyed.

It was conceded that if the court decided against the plaintiff on the first question and in favor of the plaintiff upon the second question (one half of the "Smallidge" lot conveyed by that deed, making five-sixths in the Boyds), the plaintiff would be entitled by reason of his conveyances to the remaining one sixth.

The parties also stipulated in the report that the case should be sent back for trial upon questions of fact, if deemed expedient by the law court.

*Wiswell, King and Peters*, for plaintiff.

A deed delivered without the consent of the grantor is absolutely void; it is like a forged or a stolen deed and passes no title to the grantor which he can part with. The principle, that where one of two innocent parties must suffer, he whose act has caused the loss must bear it, does not apply, because, principally, the depositary is not the agent of the grantor any more than of the grantee, he is simply a person agreed upon by both parties to hold the escrow until the happening of a particular event. Even if he was the agent of the grantor, as has often been insisted upon in argument, but not sustained by the authorities, he would be an agent only with limited authority, which authority is particularly understood by the grantee. There is no negligence upon the part of a person in placing a deed as an escrow in the hands of a responsible person agreed upon by the parties. There is no more equity in favor of the innocent purchaser than there is in favor of the person whose deed has been delivered without his knowledge and against his consent. The case is similar to that of a person who makes a deed, executes it and keeps it in his possession ready for delivery when certain conditions have been complied with. If such a deed should be stolen for or by the grantor, it couldn't for a moment be claimed that it would pass any title to the grantee which he could convey to an innocent purchaser. We think the whole distinction lies in the difference beween a voidable deed and a void deed. If a deed is delivered with the consent of the grantor, even if that consent is obtained by fraud or even perhaps by duress, and under such circumstances that the grantor could reinvest himself with the title, yet until the deed is avoided, the title

passes and the grantee can transfer that title to a purchaser for value, without notice, who can hold against the person who has been defrauded of his property; this is not true as to a forged deed, a stolen deed, or a deed delivered without the consent of the grantor.

Counsel cited:   *Everts* v. *Agnes*, 4 Wis. 343; *Tisher* v. *Beckwith*, 30 Wis. 55 (11 Am. Rep. 546); *Chipman* v. *Tucker*, 38 Wis. 43 (20 Am. Rep. 1); *Taft* v. *Taft*, 59 Mich. 185 (60 Am. Rep. 291); *Harkreader* v. *Clayton*, 56 Miss. 383 (31 Am. Rep. 369; *Smith* v. *Bank*, 32 Vt. 341 (76 Am. Dec. 179); *VanAmringe* v. *Morton*, 4 Wheat. 382 (34 Am. Dec. 517); *Crocker* v. *Belangee*, 6 Wis. 645 (70 Am. Dec. 489); *Stanley* v. *Valentine*, 79 Ill. 548; *Black* v. *Shreve*, 13 N. J. Eq. 455; *Shirley* v. *Ayres*, 14 Ohio, 308 (45 Am. Dec. 546); *Rhodes* v. *School District*, 30 Maine, 110; *Jackson* v. *Sheldon*, 22 Maine, 570; 3 Wash. R. P. pp. 321–323.

*Hale and Hamlin*, for defendants.

WALTON, J.   Whether the grantee named in a deed delivered as an escrow, who has wrongfully obtained it and put it on record, can convey a good title to a *bona fide* purchaser, is a question in relation to which the authorities are in conflict.

In *Blight* v. *Schenck*, 10 Pa. St. 285 (51 Am. Dec. 478), the court held, in a full and well reasoned opinion, that the title of a *bona fide* purchaser could not be defeated by proof that one of the deeds through which he claimed title was a wrongfully-obtained and a wrongfully-recorded escrow.   The court rested its decision on the fact that the custodian of an escrow is the agent of the grantor as well as the grantee, and if one of two innocent persons must suffer by the wrongful act of the agent, he who employs an unfaithful agent, and puts it in his power to do the act, must bear the loss; that the agent has the power to deliver the deed, and, if he delivers it contrary to his instructions, he will be answerable to his principal, and it is, therefore, reasonable that the latter, and not the innocent purchaser should bear the loss.

In *Everts* v. *Agnes*, 4 Wis. 343 (65 Am. Dec. 314), the con-

trary was held. But in the latter case the court appears to have acted in ignorance of the decision in the former case, and in ignorance of the equitable doctrine upon which it rests, although the former decision was made six years before the latter. This, as it seems to us, was an unfortunate oversight; for the former decision is supported by reasoning so strong, and, as it seems to us, so satisfactory, we cannot resist the conviction that if the attention of the court had been called to it, and the principles on which it rests, a different conclusion would have been reached ; and the subsequent decisions, which have followed the lead of that, would have no existence.

But, be this as it may, the authorities all agree that a deed cannot be delivered directly to the grantee himself, or to his agent or attorney, to be held as an escrow ; that if such a delivery is made, the law will give effect to the deed immediately, and according to its terms, divested of all oral conditions. The reason is obvious. An escrow is a deed delivered to a stranger, to be delivered by him to the grantee upon the performance of some condition, or the happening of some contingency, and the deed takes effect only upon the second delivery. Till then the title remains in the grantor. And if the delivery is in the first instance directly to the grantee, and he retains the possession of it, there can be no second delivery, and the deed must take effect on account of the first delivery, or it can never take effect at all. And if it takes effect at all, it must be according to its written terms. Oral conditions can not be annexed to it. It will, therefore, be seen that a delivery to the grantee himself is utterly inconsistent with the idea of an escrow. And it is perfectly well settled, by all the authorities, ancient and modern, that an attempt to thus deliver a deed as an escrow, can not be successful ; that in all cases, where such deliveries are made, the deeds take effect immediately and according to their terms, divested of all oral conditions.

And it is equally well settled that, if the delivery is to one who is acting at the time as an agent or attorney of the grantee, the effect is the same. In *Worral* v. *Munn*, 5 N. Y. 229, the delivery was to an agent of the grantee ; and in *Duncan* v.

*Pope*, 47 Ga. 445, the delivery was to the attorneys of the grantee ; and it was held in both cases that the deeds took effect immediately, divested of all oral conditions.

And the same principle has been extended to official bonds. *Ordinary of N. J.* v. *Thatcher*, 12 Vroom, 403 (32 Am. Rep. 225) ; *State* v. *Peck*, 53 Maine, 284.   These are instructive cases upon this branch of the law ; for they illustrate the danger of letting in oral testimony to control the delivery of written instruments.   In both cases witnesses were ready to swear to enough to render the instruments as worthless as so much waste paper.   But in the New Jersey case the bond had been delivered to the county surrogate, and the court held that he was the agent of the obligee, and that a delivery to him, in contemplation of law, was equivalent to a delivery to the obligee, himself ; and, on that ground, the court held that the evidence was inadmissible.   The law reasonably provides, said the court, that the instrument delivered shall be conclusive with respect to its contents, and the intention of the parties ; and in the same manner, and in view of the same considerations, that the act of delivering the instrument shall be equally conclusive ; that the danger to be apprehended from fraud and false swearing, as well as from the infirmity of human memory, are as great in the one case as in the other ; that if a condition could be annexed to the delivery of a deed, when made to the obligee himself, or to his agent or attorney, the very essence of the transaction would be left to depend on the memory and truthfulness of the bystanders ; and that there is manifest wisdom in the rule that in such transactions the law will regard, not what is said, but what is done.

It is easy to see, said the court, in *Miller* v. *Fletcher*, 27 Gratt. 403 (21 Am. Rep. 356), that the most solemn obligations given for the payment of money would be of but little value as securities, if they might, at a future day, be defeated by parol proof of conditions annexed to their delivery, and not performed ; and that a doctrine of this kind would, perhaps, be still more mischievous, if applied to deeds of real estate ; that if such a doctrine should prevail, the title of the grantee would be liable

to be defeated at any time by evidence of non-performed parol conditions annexed to the delivery of the deed; and that in such cases there would be no safeguards against perjury or the mistakes of "slippery memory," and all titles would be as unstable as sand upon the seashore.

The principal contention in the present case is whether one of the deeds through which the defendants have derived their title was legally delivered. The deed is from George E. Seavey and Nathaniel H. Clark to Thomas Boyd and Robert W. Boyd. It is dated January 26, 1878, was acknowledged the same day, and recorded July 15, 1878.

The plaintiff claims that this deed was delivered as an escrow; and, although acknowledged and recorded, never became operative. Upon the proofs in the case, we do not think such an attack upon the defendants' title is permissible. The proof is that the deed was made and accepted in part payment of a debt owing from the grantors to the grantees, and that it was in fact delivered to one G. C. Bartlette, an attorney at law, who had been employed by the grantees to collect the debt; that Bartlette afterward sent the deed by mail to the grantees, and that they caused it to be recorded; and that, at the time of the defendants' purchase, the deed had been on record for more than eight years, its validity apparently uncontested and unchallenged. And it is admitted that the defendants are innocent purchasers for value, and, at the time of their purchase, had no notice of the condition of the title other than that disclosed by the record. Under these circumstances, and for the reasons already given, we think the plaintiff is estopped to deny that the deed was legally delivered. We rest our decision upon the ground that the deed was, in fact, delivered to the grantees' attorney as such, and that such a delivery is equivalent to a delivery to the grantee himself; and that when such a delivery is made, it is not competent for the grantor, or those claiming under him by a subsequent conveyance, to show by oral evidence that a condition was annexed to the delivery, for the non-performance of which the deed never became operative. It seems to us that to hold otherwise would render all deeds of little value as evidence of title.

In *Somes* v. *Brewer*, 2 Pick. 184, a deed of real estate had been obtained by means so fraudulent that the court conceded that, as between the immediate parties, it would be null and void. But the deed had been recorded, and the grantee had conveyed to an innocent purchaser for value, and the court held that the title of the latter must be protected. It is a just rule, said the court, that when a loss has happened, which must fall upon one of two innocent persons, it shall be borne by him who was the occasion of the loss, even without any positive fault committed by him; and the court calls attention to the fact that in Massachusetts (and the law is the same in this State) a deed made in proper form, and duly acknowledged and recorded, is to all intents and purposes equivalent to a feoffment with livery of seizin,— that a transfer of the property is complete by the registry of the deed ; that registry is a substitute for livery of seizin, and gives all the notoriety which the law requires. And the court held that a deed, which is in form legal, and apparently complete, if acknowledged and recorded, can not, as against a *bona fide* purchaser from the grantee, be avoided by the grantor, or those claiming under him by a subsequent conveyance. And the court held further that, when a deed has been acknowledged and recorded, if the grantor intends to avoid it for any cause, he must move promptly, and counteract the notoriety of the registry by a public notice of the defect; and, if he fails to do so, that the omission may be regarded as such negligence as will estop him, and those claiming under him by a subsequent conveyance, from contesting the title of a *bona fide* purchaser from the grantee ; that if the law were otherwise, there would be no safety in deeds, records, or any other evidence of property.

In *Fletcher* v. *Peck*, 6 Cranch, 133, the opinion of the court was by Chief Justice Marshall. He said :  " If a suit be brought to set aside a conveyance obtained by fraud, and the fraud be clearly proved, the conveyance will be set aside, as between the parties. But the rights of third persons, who are purchasers without notice, and for a valuable consideration, can not be disregarded. Titles which, according to every legal test, are perfect,

are acquired with that confidence which is inspired by the opinion that the purchaser is safe. If there be any concealed defect arising from the conduct of those who held the property before he acquired it, of which he had no notice, such concealed defect can not be set up against him. He has paid his money for a title good at law, and he is innocent, whatever may be the guilt of others ; and equity will not subject him to the penalties of others' guilt. All titles would be insecure, and the intercourse between man and man seriously obstructed, if this principle were overturned."

It seems to us that this reasoning is sound, and that it is as applicable to a deed delivered to be held as an escrow, as to a deed the execution of which has been fraudulently obtained. *Quick* v. *Milligan*, 108 Ind. 419 (58 Am. Rep. 49).

Escrows are deceptive instruments. They are not what they purport to be. They purport to be instruments which have been delivered, when in fact they have not been delivered. They clothe the grantees with apparent titles which are not real titles. Such deeds are capable of being used to enable the grantees to obtain credit which otherwise they could not obtain. They are capable of being used to deceive innocent purchasers. And the makers of such instruments can not fail to foresee that they are liable to be so used. And when the maker of such an instrument has voluntarily parted with the possession of it, and delivered it into the care and keeping of a person of his own selection, it seems to us that he ought to be responsible for the use that may in fact be made of it ; and that in no other way can the public be protected against the intolerable evil of having our public records encumbered with such false and deceptive instruments.

Another question is whether the deed conveys the whole or only an undivided half of the grantor's interest in the demanded premises. We think it conveys only an undivided half. The original deed is not before us. It is said to be lost. We have only an office copy. This copy contains these words : "undivided half of one and also one other parcel of land, situated in said Eden," etc. This is a bad sentence ; but there is evidence tend-

ing to show that in the original deed the words "undivided half of" were interlined; and it is not improbable that in recording the deed, they were misplaced. It seems to us that such must have been the fact. But whether so or not, we have the words "undivided half" in the deed, and we can not doubt that they were put there for a purpose, and that that purpose was to describe the interest conveyed. This construction of the deed entitles the plaintiff to judgment for one undivided sixth part of the demanded premises.

> *Judgment for plaintiff for one undivided sixth part of the demanded premises, and no more.*

PETERS, C. J., VIRGIN, EMERY, FOSTER and HASKELL, JJ., concurred.