PROGRESSIVE IRON WORKS REALTY CORPORATION
*vs.*
EASTERN MILLING COMPANY

Kennebec.   Opinion, April 29, 1959

*Brooks Brown, Jr.,* for plaintiff.

*Rudman & Rudman,* for defendant.

SITTING: WEBBER, TAPLEY, SULLIVAN, DUBORD, SIDDALL,

WEBBER, J.   On appeal from the decree of a single justice sitting in equity.   On August 16, 1955 Progressive Iron Works Realty Corporation made a written agreement with the defendant Eastern Milling Company to sell certain industrial property for which the defendant was to pay

$20,000. The plaintiff seasonably tendered a warranty deed, whereupon the defendant questioned the plaintiff's title. The alleged flaw stemmed from the fact that the deed by which Progressive acquired title from its grantor was recorded about two hours before the recording of Progressive's certificate of incorporation. After negotiation, plaintiff and defendant orally agreed on September 15, 1955 that plaintiff should "bring proceedings in court as soon as is reasonably possible and carry them through to a conclusion" to insure the defendant a good and merchantable title. Pending conclusion of these proceedings the plaintiff was to deposit its warranty deed with the attorney for the defendant in escrow. The evidence in the case before us makes it clear that the plaintiff was to yield possession of the premises to the defendant with the right to occupy rent free and make improvements. The defendant was to deposit with the same escrow agent its check for $20,000. Both the deed and the check were to be delivered when the title was cleared in court. This escrow agreement was reduced to writing by the defendant's attorney and was signed by the plaintiff's officer. The written draft was thereafter retained by the defendant but never signed by its officer. However, the parties all took the necessary steps to perform the escrow agreement and it is not here contended that the oral agreement was not binding at its inception. The check and deed were deposited with the escrow agent. The defendant took and retained possession of the property. The plaintiff at once instituted the contemplated proceeding in equity against its grantor. Neither the plaintiff nor the defendant had anticipated more than token resistance on the part of the grantor, Great Eastern Lumber Corporation, but in fact vigorous opposition was offered by the grantor at every stage of the ensuing litigation between it and Progressive. This defendant, deeming itself damaged by what it termed the vexatious conduct of the grantor Great Eastern, brought suit against the latter for alleged

wrongful interference with the purchase contract first above mentioned. In January, 1956, apparently in a compromising mood, Great Eastern offered to deliver to Progressive a new deed if all claims for damages against it by both Progressive and Eastern Milling should be dropped. Upon submission of this offer for approval, Eastern Milling agreed with Progressive that it should be refused. On February 1, 1956 at the request of Eastern Milling, Progressive filed a new bill in equity against Great Eastern which was accompanied by attachments of real and personal property. In April, 1956 a jury trial was had in the action brought by Eastern Milling against Great Eastern (et al.) resulting in a verdict for the former. Steps were at once taken, however, by Great Eastern to have this verdict reviewed by the Law Court. In June, 1956 Great Eastern made a new offer of a deed to Progressive. When this offer was communicated to Eastern Milling the latter expressed indifference and shortly thereafter notified Progressive that it no longer intended to perform its part of the original agreement of purchase and sale because of what it considered an unreasonable lapse of time. In July, 1956 counsel for Great Eastern withdrew in the equity case with consequent further delay, but in September, 1956 Progressive obtained a decision in the equity court which had the practical effect of producing for it the long desired deed from Great Eastern. In December, 1956 Progressive tendered the escrow agent a new deed and requested delivery of the check in his hands. The defendant thereupon reaffirmed its repudiation of the purchase agreement and instructed the agent not to perform the escrow agreement. On March 12, 1957 plaintiff filed the bill in equity now before us seeking specific performance of the escrow agreement. On March 16, 1957 we certified our opinion in *Eastern Milling Company* v. *Flanagan et al.* (Great Eastern), 152 Me. 380, in which we set the verdict aside and held that there had been no flaw in the title of Progressive in the

first place. On April 15, 1958 findings were filed by the court below in the case now before us affording the plaintiff equitable relief and it may now be hoped that our decision in review of the findings and decree below may finally terminate litigation involving four expensive law suits and protracted over a period of three and a half years.

Questions which might otherwise have required extended discussion and detailed analysis are not raised here since the defendant contends only that the plaintiff unreasonably delayed performance of the escrow agreement and that the defendant was excused from performance and justified in rescission by lapse of time. It is enough then merely to note in passing as to issues not briefed or argued by defendant that equitable relief may be afforded in matters of escrow. 19 Am. Jur. 452, Sec. 31. There is a fiduciary relationship created by and inherent in the nature of an escrow agreement. The depositary has been "denominated a trustee for the parties, charged with the performance of an express trust governed by the escrow agreement." 30 C. J. S. 1203, Sec. 8; *Tucker* v. *Dr. P. Phillips Co.,* 139 F. (2nd) 601; *Bardach* v. *Chain Bakers,* 265 App. Div. 24, 37 N. Y. S. (2nd) 584. Furthermore, although the escrow agent selected by the parties in this case was attorney for one of them, he nevertheless acted throughout as an independent and neutral stakeholder. He maintained this position consistently and when it became apparent that there might be a conflict of interest and that his position as escrow agent for both parties had become incompatible with his position as attorney for the defendant, he very properly and promptly withdrew as attorney. "While as a general rule an instrument cannot be deposited with the agent or attorney of the obligor or obligee, such person may so act if it involves no violation of duty to the principal and the person acts *as an individual and not as an agent."* (Emphasis supplied.) 30 C. J. S. 1202, Sec. 7d. This dis-

tinction was noted in *Hubbard* v. *Greeley*, 84 Me. 340, 346, when the court said: "We rest our decision upon the ground that the deed was, in fact, delivered to the grantees' attorney *as such*, and that such a delivery is equivalent to a delivery to the grantee himself." (Emphasis supplied.) In the case at bar the escrow agent, although attorney for the defendant, did not act "as such" when he accepted his trust and his entire conduct thereafter was consistent with his status as agent and trustee for both parties. Moreover, the intention of the parties at the time of deposit is controlling and it is apparent that in this case both parties intended to deposit with the escrow agent as an individual and not in his capacity as attorney for one of them. See *Eddy et al.* v. *Pinder*, 131 Me. 139, 141.

Now turning to the only contention made by the defendant, was lapse of time fatal to the right of the plaintiff to have performance of the escrow agreement? The learned justice below found in that connection: "The delays in obtaining the desired corrective deed of the premises from a third party were not, in my opinion, chargeable to the plaintiff and did not destroy the agreement of the parties." The finding is fully supported by the evidence and is correct both as to fact and law. As already noted, the original agreement was that the plaintiff should "bring proceedings in court as soon as is reasonably possible and carry them through to a conclusion" to insure the defendant a good and merchantable title. This is exactly what the plaintiff did. The defendant cannot be heard to complain that plaintiff substituted a new bill in equity five months after he had first commenced legal action since the second proceeding was instituted at the suggestion of the defendant and with its consent. Nor was it the fault of the plaintiff that its grantor offered sustained and time consuming opposition to the efforts of the plaintiff to carry the proceedings through "to a conclusion." The defendant might have had

a deed from Progressive conveying good title at any stage of the proceedings but preferred to have the added force of a court decision. That having been obtained and no lack of diligence on the part of the plaintiff having been shown, the defendant was without any right to rescind the escrow agreement or interfere with the performance of his duties by the escrow agent. The court below properly ordered specific performance and assessed additional damages directly resulting from the defendant's unwarranted repudiation.

Our attention has been directed to the fact that the plaintiff may have been put to additional expense for taxes during the pendency of this appeal. Further proceedings may be required to ascertain whether and to what extent the decree below should be modified in this respect.

The entry will be

*Appeal denied. Remanded for f u r t h e r proceedings and modification of the decree below in accordance with this opinion.*