676 A.2d 242

**Alicja JANSON, Appellant,**

v.

**COZEN AND O'CONNOR, Appellee.**

Superior Court of Pennsylvania.

Argued Sept. 12, 1995.

Filed April 23, 1996.

416

---

Richard C. Bennett, Philadelphia, for Janson.

Steven E. Angstreich, Philadelphia, for Cozen and O'Connor.

Before KELLY, FORD ELLIOTT and HOFFMAN, JJ.

KELLY, Judge.

In these cross-appeals we are called upon to determine whether a valid escrow agreement can arise when a lawyer acting solely upon the instructions of his client deposits the proceeds from the sale of opposing party's stock into his law firm's escrow account, then, after subsequently informing opposing party that the proceeds from the sale of her stock has been placed in his law firm's escrow account, utilize a portion of these same funds at his client's instruction to settle another case. We hold that a valid escrow agreement between the law firm's client, opposing party, and law firm never arose. Thus, the law firm owed no fiduciary duty towards opposing party to hold the proceeds from the sale of opposing party's stock in its escrow account until such time as pending litigation between its client and opposing party was completed. Therefore, we reverse the trial court's order entering summary judgment in

favor of opposing party and remand to the trial court for entry of summary judgment in favor of the law firm.

The relevant facts and procedural history of these cross-appeals are as follows. During the months of June and July, 1987, Alicja Janson (Janson) began negotiations for a sales position with George A. Switlyk (Switlyk) and Lloyd's Development Corporation. Subsequently an agreement was reached where Janson was to receive an annual salary of $57,000.00. Upon the commencement of Janson's employment, Switlyk informed her that he was reducing the previously agreed upon salary to $36,000.00 per year but promised to give Janson nineteen thousand, five hundred shares of stock in Lloyd's Acceptance Corporation. The shares were valued at $1.25 per share.

On November 1, 1988, after several disagreements regarding the terms of her employment arose, Janson sent Switlyk a letter instructing him to sell her shares in Lloyd's Acceptance Corporation. Accordingly, on January 2, 1989, Switlyk sold Janson's nineteen thousand, five hundred shares of stock in Lloyd's Acceptance Corporation for $1.25 per share, thus receiving a gross sales price of $24,375.00. Switlyk then took a thirteen percent sales commission for Lloyd's Acceptance Corporation equaling $3,168.75.

During this same time period, Switlyk retained the law firm of Cozen and O'Connor to represent him and Lloyd's Acceptance Corporation in their dispute with Janson. Richard C. Bennett, Esquire, a member of the law firm, was assigned to represent Switlyk and Lloyd's Acceptance Corporation. Shortly thereafter, Switlyk forwarded a check of $21,206.25 to Attorney Bennett with a cover letter instructing him to place these funds in Cozen and O'Connor's escrow account.

On February 1, 1989, Janson filed suit against Switlyk and Lloyd's Acceptance Corporation. In the answer to Janson's complaint, which was drafted and signed by Attorney Bennett, Switlyk admitted that the stocks were sold for $24,375.00 less a thirteen percent commission to Lloyd's Acceptance Corporation and that his attorney was holding the balance of $21,-

206.25. However, Switlyk further asserted that he was not obligated to make payment to Janson in this amount due to Janson's misconduct while employed by Lloyd's Development Corporation. These reasons were subsequently set forth in Switlyk's and Lloyd's Acceptance Corporation's new matter and counterclaims. At a deposition held on July 11, 1990, Janson's counsel asked Switlyk about the money received from the sale of Janson's stock. Switlyk replied that he had "escrowed" the money. Attorney Bennett then interjected, "To clarify something, it [the money] is in our escrow account. I don't know off the top of my head whether it is gathering interest and, if so, at what rate." (Switlyk's Deposition, 7/11/90, at 100–01).

During this same time period, Switlyk also was involved in litigation with John Tersigni with the firm of Cozen and O'Connor also serving as defense counsel. Switlyk subsequently instructed Attorney Bennett to use $18,000 of the $21,206.25 being held in Cozen and O'Connor's escrow account to settle the Tersigni case. Bennett followed Switlyk's instructions. Therefore, after the Tersigni matter was settled, only $3,206.25 of the original $21,206.25 remained in Cozen and O'Connor's escrow account.

On February 18, 1991, a pretrial conference was held before the Honorable Robert A. Freedburg. At this pretrial conference, it was disclosed to Janson by Attorney Bennett that $18,000.00 of the funds received from the sale of the stock had been used to settle the Tersigni matter.

On November 12, 1991, a non-jury trial was held in *Janson v. Switlyk and Lloyd's Acceptance Corporation* which culminated in a verdict of $21,305.00 in favor of Janson. When Janson moved to execute on her $21,305.00 judgment, she issued Interrogatories in Aid of Execution upon Cozen and O'Connor. Cozen and O'Connor subsequently answered the Interrogatories by admitting that it had been holding $21,-305.00 in its escrow account but stated these funds had been deposited by Switlyk with the firm as a retainer and "war chest" to fund Switlyk's defense in the Janson action and the Tersigni case. Cozen and O'Connor further stated that $18,-

000.00 of these funds were paid to Tersigni in settlement of his lawsuit against Switlyk. Therefore, Cozen and O'Connor stated only $3,206.25 remained. Additionally, Cozen and O'Connor stated that Switlyk had been billed for and presently owed the firm in excess of $3,206.25 for legal services that the firm had performed on his behalf.

After receiving Cozen and O'Connor's response to Interrogatories in Aid of Execution, Janson filed suit against Cozen and O'Connor. In her initial complaint, Janson asserted in Count I that Cozen and O'Connor breached its fiduciary duty to her by first representing to her that the proceeds from the sale of her stock rested in the firm's escrow account thereby becoming her fiduciary and owing her a duty to maintain the funds, intact, and not to disperse them without her authorization. In Count II of her complaint, Janson alleged that Cozen and O'Connor, through its representation that it was holding $21,305.00 in its escrow account, intended Janson to detrimentally rely upon this representation and not pursue any legal action to protect these funds by way of seeking summary judgment and/or requesting that the funds be interpled, thereby committing an act of fraud against her.[1]

After the trial court denied Cozen and O'Connor's preliminary objections, Cozen and O'Connor filed an answer and new matter to the complaint. In this answer, Cozen and O'Connor specifically denied that either Switlyk or the firm had ever represented to Janson that the $21,305.00 was being held in the firm's escrow account for her benefit, rather Switlyk merely represented that sum of $21,305.00 was currently being held in the firm's escrow account. Additionally, Cozen and O'Connor averred in its answer that the funds had been placed in the firm's escrow account as a retainer and "war chest" for the purposes of funding Switlyk's defense in the Janson and Tersigni matters. Finally, Cozen and O'Connor specifically denied that it ever became Janson's fiduciary or

1. Additionally, Janson averred in her complaint that Switlyk is now a resident of the State of Florida and has numerous judgments against him in various jurisdictions throughout the United States, thus rendering it extremely unlikely that she would ever succeed in collecting her judgment against him.

owed her any duty not to disperse these funds. Cozen and O'Connor further specifically denied that Janson and her attorneys were justified in relying upon the assumption that these monies would remain in the firm's escrow account indefinitely.

In its new matter, Cozen and O'Connor raised the defense that the allegations contained in Janson's complaint were legally insufficient to state a cognizable cause of action for either breach of fiduciary duty or fraud and therefore should be dismissed. Subsequently, Janson filed an amended complaint seeking punitive damages in excess of $50,000.00 based on Cozen and O'Connor's alleged intentional, willful, wanton, and reckless misconduct. Cozen and O'Connor filed preliminary objections to the amended complaint asserting that Janson's complaint was legally insufficient to set forth causes of action for breach of fiduciary duty or fraud, therefore she was not entitled to receive either compensatory or punitive damages.

On December 2, 1993, the Honorable F.P. Kimberly McFadden, entered an order with a statement of reasons denying Cozen and O'Connor's preliminary objections to the amended complaint. Cozen and O'Connor then filed an answer to the amended complaint with a new matter. In this answer and new matter, Cozen and O'Connor once again specifically denied Janson's breach of fiduciary duty and fraud causes of action. Cozen and O'Connor also denied that Janson was entitled to receive punitive damages. Finally, in its new matter, Cozen and O'Connor raised the same defenses it had previously raised in its answer to Janson's previous complaint.

The parties then both filed motions for summary judgment. Oral argument on the parties' motions for summary judgment was held before the Honorable James C. Hogan. Following oral argument, Judge Hogan entered an order with an opinion granting summary judgment in favor of Janson for $21,305.00 but denying her request for punitive damages. These timely cross-appeals followed.

On appeal, the parties raise the following issues for our review:

1. DID THE COURT BELOW FIND THE DEFENDANT LAW FIRM HAD COMMITTED FRAUD?

2. DID NOT THE COURT BELOW ERR IN HOLDING THAT A VOLUNTARY ESCROW AGREEMENT WAS CREATED BETWEEN THE PARTIES, PURSUANT TO WHICH THE DEFENDANT LAW FIRM, AS ATTORNEY FOR ONE PARTY IN THE UNDERLYING LITIGATION, BECAME THE ESCROW AGENT FOR BOTH PARTIES IN THAT LITIGATION AND OWED BOTH ITS OWN CLIENT AND ITS CLIENT'S LITIGATION ADVERSARY A FIDUCIARY DUTY?

3. DID NOT THE COURT BELOW ERR IN HOLDING THAT THE DEFENDANT LAW FIRM BREACHED THE AFORESAID FIDUCIARY DUTY WHEN IT FOLLOWED ITS OWN CLIENT'S EXPRESS INSTRUCTIONS AND DISBURSED A SUM OF MONEY THAT ITS OWN CLIENT HAD DEPOSITED WITH IT?

(Cozen and O'Connor's Brief at 1).

WHETHER THE COURT BELOW ERRED BY FAILING TO AWARD PUNITIVE DAMAGES IN FAVOR OF CROSS–APPELLANT AND AGAINST CROSS–APPELLEE IN LIGHT OF THE FACT THAT THE COURT DID FIND THAT CROSS–APPELLEE KNOWINGLY BREACHED ITS FIDUCIARY DUTY OWED TO CROSS–APPELLANT AND COMMITTED A FRAUD UPON HER.

(Janson's Brief at 3).

■ At the outset, we note that in reviewing orders granting summary judgment, our scope of review is limited. This Court has previously summarized the appropriate standard as follows:

The relevant elements necessary to permit summary judgment are as follows:

First, the pleadings, depositions, answers to interrogatories, admissions on file, together with any affidavits, must demonstrate that there exists no genuine issue of fact. Second, the moving party must be entitled to judgment as a matter of law. The moving party has the burden of proving that no genuine issue of material fact exists. However, the non-moving party may not rest upon averments contained in its pleadings; the non-moving party must demonstrate that there is a genuine issue for trial. The court must examine the record in the light most favorable to the non-moving party and resolve all doubts against the moving party. Finally, an entry of summary judgment is granted only in cases where the right is clear and free of doubt. We reverse an entry of summary judgment when the trial court commits an error of law or abuses its discretion.

*Accu–Weather, Inc. v. Prospect Communications, Inc.,* 435 Pa.Super. 93, 98–99, 644 A.2d 1251, 1254 (1994) (footnote and citations omitted).

*Blackman v. Federal Realty Inv. Trust,* 444 Pa.Super. 411, 415, 664 A.2d 139, 141–42 (1995).

■ For the purposes of clarity, we will begin our analysis by addressing the second and third issues raised in Cozen and O'Connor's cross appeal. In its second and third issues on appeal, Cozen and O'Connor maintains that Judge Hogan erred by holding that Cozen and O'Connor had breached its fiduciary duty to Janson when it acted upon Switlyk's instructions to utilize a portion of the $21,206.25, that had been placed in its escrow account by Switlyk, to settle the Tersigni matter. Cozen and O'Connor asserts that the fact that Attorney Bennett had stated to Janson that funds from the sale of the stock had been placed in an escrow account did not necessarily cause an escrow agreement to occur. Firstly, Cozen and O'Connor argues that at no time did it represent to Janson or her attorneys that the $21,206.25 was being held in escrow for her benefit or that this sum would remain in escrow until the litigation between Janson and Switlyk was resolved. Secondly, Cozen and O'Connor contends that in

order for a valid escrow agreement to arise, the contingency that will trigger the disbursement of the escrowed funds must be imposed at or before the time of deposit. Cozen and O'Connor claim no such "meeting of the minds" ever occurred between Switlyk and Janson regarding the extent of the alleged escrow agreement and the terms and conditions that would govern the disposition of these funds. Finally, Cozen and O'Connor submits that under the circumstances of this case, no escrow agreement could have ever arisen because the law firm's representation of Switlyk placed it in an adversarial role towards Janson, and therefore it would have been a conflict of interest for the law firm to also act as a fiduciary of both parties as depository of any alleged escrow agreement between the parties.

At common law an escrow was an instrument for the conveyance of land deposited by the grantor with a third party to be kept by the latter until the performance of a condition or the happening of a certain event and was then to be delivered over to the grantee. The doctrine of escrow was extended at an early date to all sealed instruments and subsequently, to all written instruments importing legal obligations: 19 Am.Jr. 419; 30 C.J.S. 1191–1194. More recently the concept has been further expanded to include money and personal property; 30 C.J.S. 1194; see footnote 1; *Angelcyk v. Angelcyk*, 367 Pa. 381, 384 [80 Á.2d 753 (1951)].

The condition or the contingency upon which the escrow is to be delivered by the depositary to the grantee, obligee or promisee, is expressed by an agreement of the parties termed the "escrow agreement" which may be in writing, or oral, or partly in writing and partly oral (*Angelcyk v. Angelcyk, supra*). In order to be legally effective the escrow agreement must be a valid contract between all of the parties and must set forth the nature of the escrow and the conditions of delivery. In the absence of such a contract, the grantor, obligor or promisor may recall the escrow and the agreement is unenforceable: 19 Am.Jur. 421. A valid escrow agreement must be so complete that it only

remains for the grantee or other person to perform the condition, or the event to happen, to give the instrument effect or to compel delivery to him of the money or personal property: 30 C.J.S. 1192.

*Spedding v. Patrick,* 35 Northam. 220, 226 (1959).

The depositary (of an escrow or) under an escrow agreement is generally considered to be an agent (or trustee) for both parties—a special agency whose authority must be strictly construed, and who is bound by the terms of the escrow agreement. *Kreuer v. Union National Bank of McKeesport,* 276 Pa. 201, 205, 206, 119 A. 921; *Kellogg v. Curry,* 1951, 101 Cal.App.2d 856, 226 P.2d 381; *People v. Hess,* 1951, 104 Cal.App.2d 642, 234 P.2d 65; 21 C.J., page 878, 30 C.J.S., Escrows, § 8; 11 Am. & English Encyclopedia Law, 2d Ed., p. 345; 19 Am.Jur., p. 430, sec. 13.

*Paul v. Kennedy,* 376 Pa. 312, 315, 102 A.2d 158, 159 (1954). *See also Samango v. Pileggi,* 363 Pa.Super. 423, 526 A.2d 417 (1987), *allocatur denied,* 517 Pa. 624, 538 A.2d 877 (1988). Accordingly, an escrow holder cannot be the agent of only one of the parties. *Foreman v. Todd,* 83 Idaho 482, 485, 364 P.2d 365, 366 (1961). Therefore, as a general rule, an instrument or funds cannot be deposited as an escrow with an agent or attorney of the grantor or obligor, because the possession of the instrument by such agent or attorney is equivalent to possession of it by the grantor or obligor and is revocable by him. 30A C.J.S. Escrows § 7d 984. *See also Progressive Iron Wks. Rlty. Corp. v. Eastern Mill. Co.,* 155 Me. 16, 150 A.2d 760 (1959); *Pickle v. Whitaker,* 224 S.W.2d 741 (1949); *Brown v. Brown,* 192 Ga. 852, 16 S.E.2d 853 (1941); *Home Ins. Co. of New York v. Wilson,* 210 Ky. 237, 275 S.W. 691 (1925); *Day v. Lacasse,* 85 Me. 242, 27 A. 124 (1892); *Hubbard v. Greeley,* 84 Me. 340, 24 A. 799 (1892). Under some limited circumstances, however, an agent or attorney of one of the parties may act as the escrow holder. *Lipman v. Noblit,* 194 Pa. 416, 45 A. 377 (1900); *Cradock v. Cooper,* 123 So.2d 256, 258 (Fla.Dist.Ct.App.1960) (citing *Lipman v. Noblit, supra*); *Snodgrass v. Thomson,* 202 Okl. 209, 211 P.2d 521 (1949). Thus, "the attorney of the grantor of the subject

matter of the escrow agreement may act as escrow agent so long as his duties do not involve a conflict of interest with, or a violation of, the duty to his client as principal, and so long as the condition of the escrow is not made dependent upon the client's volition." *Cradock v. Cooper, supra* at 257. *See also Entertainment & Amusements of Ohio v. Barnes,* 49 Misc.2d 316, 317, 267 N.Y.S.2d 359, 362 (1966); *Progressive Iron Wks. Rlty. Corp. v. Eastern Mill. Co., supra* at 19, 150 A.2d at 762; *Snodgrass v. Thomson, supra* at 211, 211 P.2d at 523; *McGriff v. McGriff,* 48 Ohio Law Abstract 218, 223–24, 74 N.E.2d 619, 622 (1947); *Levin v. Nedelman,* 141 N.J.Eq. 23, 30, 55 A.2d 826, 831 (1947), *reversed on other grounds,* 142 N.J.Eq. 769, 61 A.2d 76 (1948); *Gronewold v. Gronewold,* 304 Ill. 11, 16, 136 N.E. 489, 491 (1922); *Henry v. Hutchins,* 146 Minn. 381, 386, 178 N.W. 807, 809 (1920); *Kelly v. Chinich,* 91 N.J.Eq. 97, 103, 108 A. 372, 374 (1919). The intention of the parties at the time of deposit is controlling as to whether an attorney is acting as an individual or in his capacity as attorney for one of the parties. *Progressive Iron Wks. Rlty. Corp. v. Eastern Mill. Co., supra* at 20, 150 A.2d at 762; 30 C.J.S. § 7d, p. 985. *See also Eddy v. Pinder,* 131 Me. 139, 159 A. 727 (1932).

Instantly, under the particular facts of this case, a valid three-sided escrow agreement could not have arisen among Janson, Switlyk and Cozen and O'Connor during the time period before Switlyk instructed Cozen and O'Connor to utilize $18,000.00 of the $21,206.25 deposited in the firm's escrow account to settle the Tersigni matter. We reach this conclusion through the following reasoning.

Switlyk, originally retained the law firm of Cozen and O'Connor to represent him in his dispute with Janson with a member of the firm, Richard C. Bennett, Esquire, acting as his counsel. Shortly thereafter, Switlyk forwarded a check for $21,206.25 to Attorney Bennett instructing him to place those funds in Cozen and O'Connor's escrow account. When these funds were deposited by Attorney Bennett into Cozen and O'Connor's escrow account, he was acting at the instruction of *his* client, Switlyk. Janson played no role or had no input in Switlyk's decision to have the funds that Switlyk gained from

the sale of Janson's stock into Cozen and O'Connor's escrow account. The first time that Janson learned that the funds which Switlyk had received from the sale of her stock had been placed by Switlyk's counsel into his law firm's escrow account was when Switlyk filed an answer to her complaint. All actions taken by Attorney Bennett during the entire time period from the date on which the $21,206.25 was deposited into Cozen and O'Connor's escrow account until the end of the litigation between Janson and Switlyk were taken on behalf of *his* client, Switlyk. At no time during this time period could Attorney Bennett have been deemed as acting in any capacity other than Mr. Switlyk's counsel. Therefore, a valid escrow agreement could not have arisen at the time the funds were placed into Cozen and O'Connor's escrow account. *See Progressive Iron Wks. Rlty. Corp. v. Eastern Mill. Co., supra* (the intention of the parties at time of deposit is controlling as to whether an attorney is acting as an individual or in his capacity as attorney for one of the parties). *See also Simmet v. Graeber*, 295 Pa. 510, 514, 145 A. 528, 529 (1929) (an escrow contract will not arise where eventual transferee is not a party to the transaction). Thus, a legally effective escrow agreement between Switlyk, Janson and Cozen and O'Connor which set forth the nature of the escrow and conditions of delivery never arose. Accordingly, due to the absence of such an escrow agreement, Switlyk was entitled to recall at any time the funds which he had placed in Cozen and O'Connor's escrow account. *See Spedding v. Patrick, supra.* Switlyk exercised precisely that course of action when he directed *his* attorney, Richard C. Bennett, Esquire, to utilize a portion of these funds ($18,000.00) to settle the Tersigni matter. As Switlyk's attorney, Richard C. Bennett, was compelled by his duty towards his client to follow these instructions and use a portion of these funds to settle the Tersigni matter. Accordingly, absent a valid escrow agreement, neither Attorney Bennett, nor his law firm, Cozen and O'Connor breached any fiduciary duty toward Janson regarding these funds because no fiduciary duty towards her ever existed. As such, Janson must attempt to recover on her judgment against Switlyk from him and not from Cozen and O'Connor. Thus, the trial

court committed an error of law by holding that a valid escrow agreement had arisen among Janson, Switlyk and Cozen and O'Connor and that Cozen and O'Connor had breached its fiduciary duty towards Janson by paying out the funds that had been placed in its escrow account by Switlyk to settle the Tersigni matter.

Based upon the foregoing, the trial court's order entering summary judgment against Cozen and O'Connor and directing it to pay $21,206.25 plus interest is reversed and the case is remanded to the trial court for the entry of summary judgment in favor of Cozen and O'Connor.[2]

Reversed and remanded.

---

**2.** Due to our disposition of Cozen and O'Connor's second and third issues on appeal, we need not address Cozen and O'Connor's first issue nor the issue raised in Janson's cross-appeal regarding her entitlement to punitive damages.