J-A20006-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| WILLIAM C. MCCLOSKEY, FAMILY LIMITED PARTNERSHIP | : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : : : | |
| v. | : : : | |
| | : | No. 235 WDA 2021 |
| JOSEPH TALARICO, TDBA TALARICO, PALADINO, AND BERG | : : | |

Appeal from the Judgment Entered April 29, 2021
In the Court of Common Pleas of Washington County
Civil Division at No(s):  No. 2014-6538

BEFORE:  PANELLA, P.J., BENDER, P.J.E., and McCAFFERY, J.

MEMORANDUM BY PANELLA, P.J.:                **FILED: MARCH 18, 2022**

The William C. McCloskey Family Limited Partnership ("McCloskey FLP") appeals from the judgment entered in favor of Attorney Joseph Talarico in this action based upon McCloskey FLP's claim that Attorney Talarico, acting as a closing agent, miscalculated the realty transfer tax[1] due on McCloskey FLP's sale of a vacant lot. On appeal, McCloskey FLP contends the trial court, in its non-jury verdict, misconstrued both the applicable law and the evidence presented. After careful review, we affirm.

---

[1] "The realty transfer tax is a tax upon the transaction, the transfer of title to real estate as evidenced by a document that is presented to be recorded." ***Exton Plaza Assocs. v. Commonwealth***, 763 A.2d 521, 523 (Pa. Cmwlth. 2000); 72 P.S. § 8102-C.

The following facts are undisputed, except where noted. Attorney Talarico acted as closing agent for McCloskey FLP's sale of a vacant lot to Shaka and Denise Walker. Since the Walkers executed a contract with Eddy Homes to construct a new home on the lot on that same day, Attorney Talarico and his law firm, Talarico, Paladino, and Berg, determined that the realty transfer tax due on the transaction was required to be based on the value of the improved lot instead of the sale price of the vacant lot. The difference in the tax amount was more than $7,000.

Susan Brunko, who is a limited partner in McCloskey FLP, acted as the realtor for McCloskey FLP during this transaction. Prior to the initial scheduled closing, Attorney Talarico and another employee of his law firm, Attorney Elizabeth Shovlin, told Susan their opinion that the realty transfer tax due was based on the value of the improved lot. Susan disagreed and canceled the scheduled closing.

However, after speaking with her mother, Nancy Brunko McCloskey, who was the managing general partner of McCloskey FLP,[2] Susan sent an e-mail to Attorney Talarico indicating that her mother was willing to pay the

_____

[2] Nancy managed the partnership until she passed away during the pendency of this litigation. *See* N.T., Non-Jury Trial, 9/30/20, at 66. The remaining general partner is William McCloskey. *See id.* at 50. Susan Brunko and her brother are limited partners with "no say in how the partnership is run." *Id.* at 67. At the time of trial, William McCloskey lived in an assisted living home and was not active in managing the partnership. *See id.* at 67.

realty transfer tax on the improved lot. At the rescheduled closing, Nancy Brunko McCloskey signed all the necessary documents, including the settlement statement that listed the realty transfer tax due as the amount based on the value of the improved lot.

After the transaction was consummated, McCloskey FLP filed this action against Attorney Talarico. McCloskey FLP raised claims of breach of contract, negligence, and negligent misrepresentation, based on McCloskey FLP's allegation that Attorney Talarico miscalculated the realty transfer tax due. Attorney Talarico filed an answer with new matter and a counterclaim for abuse of process. After substantial litigation over pretrial motions, including the joinder and subsequent dismissal of Eddy Homes, the case proceeded to an arbitration.

The arbitration panel found in favor of McCloskey FLP in the amount of $4,512.21 on McCloskey FLP's claims and against Attorney Talarico on his counterclaim. Attorney Talarico filed a timely appeal from the arbitrator's award. After more motions were litigated, the case proceeded to a bench trial.

The witnesses at trial were Susan Brunko, Attorney Talarico, and McCloskey FLP's trial counsel.[3] While both testified at length, the primary

---

[3] McCloskey FLP's trial counsel testified to a factual issue relevant to Attorney Talarico's counterclaim for abuse of process. Since Attorney Talarico has not appealed from the verdict in favor of McCloskey FLP on his counterclaim, this testimony is not relevant to any issue in this appeal.

dispute was the legal issue of whether Attorney Talarico was correct in his belief that the realty transfer tax was required to be assessed on the value of the improved lot. The primary factual dispute concerned Susan's allegation that her mother had acquiesced on the increased realty transfer tax assessment due to a threatened lawsuit.

The trial court found in favor of Attorney Talarico on McCloskey FLP's claims, and in favor of McCloskey FLP on Attorney Talarico's counterclaim. After the trial court denied McCloskey FLP's post-trial motion, McCloskey FLP filed this timely appeal.[4]

Our review of a challenge to a non-jury verdict is limited:

> Our standard of review in non-jury trials is to assess whether the findings of facts by the trial court are supported by the record and whether the trial court erred in applying the law. Upon appellate review, the appellate court must consider the evidence in the light most favorable to the verdict winner and reverse the trial court only where the findings are not supported by the evidence of record or are based on an error of law. Our scope of review regarding questions of law is plenary.

_____

[4] This Court issued a rule to show cause why the appeal should not be quashed, as final judgment had not been entered on the trial court docket. *See Croyle v. Dellape*, 832 A.2d 466, 470 (Pa. Super. 2003) (explaining that an appeal lies from the entry of judgment, rather than the entry of post-trial motions). In response, McCloskey FLP provided this Court with the praecipe for entry of judgment and a copy of the trial court docket indicating that judgment was entered on April 29, 2021. Accordingly, we will treat the notice of appeal as properly filed from the entry of judgment. *See El-Gharbaoui v. Ajayi*, 260 A.3d 944, 949 n.1 (Pa. Super. 2021).

***Woullard v. Sanner Concrete & Supply***, 241 A.3d 1200, 1207 (Pa. Super. 2020) (citation and brackets omitted). Further, we will not disturb the trial court's credibility determinations. ***See Gutteridge v. J3 Energy Grp., Inc.***, 165 A.3d 908, 916 (Pa. Super. 2017).

Initially, we note that McCloskey FLP did not specifically raise any challenge to the verdict on its breach of contract claim in its Rule 1925(b) concise statement, nor has McCloskey provided any argument for such claim on appeal. ***See*** Pa.R.A.P. 1925(b)(4)(vii) (stating that "[i]ssues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived."). Similarly, McCloskey FLP's appellate brief does not discuss the nature of Attorney Talarico's relationship to McCloskey FLP beyond the mere assertion that he was the closing agent for the transaction.

The term "closing agent" does not appear to be defined in Pennsylvania law. Based on the testimony presented at the bench trial, we surmise that Attorney Talarico acted as the escrow agent for the parties in this transaction. An escrow agent "is generally considered to be an agent (or trustee) for both parties—a special agency whose authority must be strictly construed, and who is bound by the terms of the escrow agreement." ***Janson v. Cozen & O'Connor***, 676 A.2d 242, 247 (Pa. Super. 1996) (citations omitted). In other words, any duty Attorney Talarico owed McCloskey as closing agent emanated from the escrow agreement.

There is no written escrow agreement in the certified record. Nor is there any evidence of the terms of an oral escrow agreement. In light of this absence, our ability to review McCloskey FLP's claims on appeal is severely hampered. While Attorney Talarico conceded he owed a fiduciary duty to McCloskey FLP at closing, it is impossible to determine the scope of the duty without some indication of the terms of the escrow agreement.

However, we conclude this defect in the record does not prevent us from concluding that Attorney Talarico correctly argues that McCloskey FLP failed to prove necessary elements of its negligence and negligent misrepresentation claims. McCloskey FLP's fundamental factual assertion in these two causes of action is that it detrimentally relied on Attorney Talarico's calculation of the realty transfer tax.

Our review of the record confirms that prior to the settlement, the parties discussed the terms identified on the settlement statement, including the realty transfer tax. In a February 26, 2014 email to Attorney Shovlin, Brunko stated, "[o]ther than the $1000 escrow which the Sellers will not agree to, *it looks good*." **See** Response to Motion for Summary Judgment, 5/3/18, Exhibit C (emphasis added). The following day, Attorney Shovlin stated the realty transfer tax "gets paid on the whole package," and asked Brunko who would pay and how the tax should be listed on the settlement statement. **See id.** Brunko replied, "OK. Seller is responsible for the lot portion which would be 2000. Eddy Homes would be responsible for the amount … of the loan for

the house." *Id.* Attorney Shovlin explained that Eddy Homes would not pay the balance, and "[t]he sales contract states that the parties shall split the transfer taxes equally." *Id.* In response, Brunko stated McCloskey FLP had "agreed to pay the full stamp." *Id.*

The parties then proceeded to settlement, with Attorney Talarico acting as the closing agent. The settlement statement identified McCloskey FLP as the "sellers" and included the purchase price of $160,000.00 for the lot. *See* Brief Contra Plaintiff's Petition for Judgment on the Pleadings, 7/10/17, Exhibit A (HUD-1).[5] The section labeled "Summary of Borrower's Transaction" includes the price of the lot, the Walkers' settlement charges, and the construction contract with Eddy Homes, priced at $635,798.00. *See id.* After the addition of taxes and assessments, the settlement statement provides for a gross amount of $821,214.38 due from the Walkers. *See id.*

Importantly, the settlement statement explicitly provided McCloskey FLP would be assessed the realty transfer tax in the amount of $9,947.47. *See id.* Susan Brunko testified that, prior to the initial scheduled closing, she advised McCloskey FLP not to close the deal, as she believed it was only liable for the transfer tax on the unimproved lot. *See* N.T., Non-Jury Trial, 9/30/20, at 10, 57-59. Ultimately, her advice was overruled by her mother, the managing general partner in McCloskey FLP, Nancy Brunko McCloskey. Nancy Brunko

---

[5] Eddy Homes is not identified anywhere on the settlement statement.

McCloskey signed the settlement statement on behalf of McCloskey FLP against Susan's advice. *See id.* at 48.

This testimony established that McCloskey FLP did not rely on Attorney Talarico's calculation of the realty transfer tax. To avoid this conclusion, McCloskey FLP claims that Nancy Brunko McCloskey signed the settlement statement under duress. Specifically, Susan Brunko testified that Nancy told her that if she did not sign the settlement statement, "he would threaten me with a lawsuit." *See id.* at 57-58.

McCloskey FLP offers no more than a bald allegation that Attorney Talarico threatened to sue McCloskey FLP if Nancy Brunko McCloskey did not proceed with the closing as scheduled. McCloskey FLP fails to support this claim with any evidentiary proof of the alleged threat, and we decline to develop this argument on McCloskey FLP's behalf. *See Coulter v. Ramsden*, 94 A.3d 1080, 1088 (Pa. Super. 2014). This record is wholly devoid of any evidence capable of establishing the use of improper threats capable of overriding Nancy Brunko McCloskey's free will.

Finally, while there is some evidence of record that Attorney Talarico (or his firm) billed McCloskey FLP for legal services related to this transaction, *see id.* at 105-06, McCloskey FLP did not present any evidence that Attorney Talarico was acting as McCloskey FLP's attorney in calculating the transfer tax. In fact, Susan Brunko testified that Attorney Talarico was not acting as an attorney for McCloskey FLP at the closing. *See id.* at 69-70. Furthermore,

McCloskey FLP did not present any evidence to rebut Attorney Talarico's testimony that the billing was based on a deed correction performed by Attorney Shovlin. ***See id.*** at 106. Coupled with Susan Brunko's testimony that she counseled her mother to reject Attorney Talarico's calculation, McCloskey FLP could not establish that it employed Attorney Talarico as an attorney to calculate the transfer tax, and accordingly, cannot establish legal malpractice on this record.[6] ***See Kituskie v. Corbman***, 714 A.2d 1027, 1029-30 (Pa. 1998).

Under these circumstances, even if McCloskey FLP established it was not represented by separate counsel at the closing, it would not be entitled to relief on any of its claims. The testimony of Susan Brunko established that McCloskey FLP was well aware of the difference between the transfer tax due on the unimproved lot versus the transfer tax due on the improved lot.

_____

[6] We observe that McCloskey FLP's argument concerning legal malpractice is largely underdeveloped. ***See*** Pa.R.A.P. 2119(a) (requiring the argument to include "such discussion and citation of authorities as are deemed pertinent."). Further, McCloskey FLP's complaint and appellate brief do not specifically allege professional negligence or set forth the requirements of such claim. However, the general averments sound in professional negligence. ***See generally*** Complaint, 10/22/14, ¶ 6 (stating, "Attorney Talarico was in fact a learned professional and skilled legal scholar employed by a prestigious law firm and was the closing agent on said transaction under a fiduciary obligation to all parties in the proper handling of funds"), ¶ 26 (arguing "[Attorney Talarico] failed to exercise reasonable care or competence as an attorney"). McCloskey FLP did not file a certificate of merit, and Attorney Talarico did not object or seek entry of a judgment of *non pros*. ***See*** Pa.R.Civ.P. 1042.3(a) (requiring a plaintiff alleging a professional negligence claim to file a certificate of merit within 60 days after filing the complaint); Pa.R.Civ.P. 1042.6.

McCloskey FLP attempted to get Eddy Homes to pay the difference, but when Eddy Homes refused, Nancy Brunko McCloskey signed the settlement statement anyway. McCloskey FLP presented no evidence that the presence of counsel at the closing would have changed this decision.

In summary, we find it is undisputed that McCloskey FLP was aware that the transfer tax on the unimproved lot would be approximately $2,000.00. Further, it is undisputed that McCloskey FLP was aware that its realtor disagreed with Attorney Talarico's conclusion that the transfer tax should be assessed against the value of the improved lot. Nevertheless, McCloskey FLP agreed to pay the realty transfer tax based upon the value of the improved lot, and willingly signed the settlement statement. McCloskey FLP cannot now seek a reduction of the transfer tax under the guise of a claim the closing agent negligently miscalculated the tax due.[7]

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/18/2022

---

[7] To the extent our analysis differs from that of the trial court, we note "this Court is not bound by the reasoning of the trial court, and we may affirm the trial court's order on any valid basis." **Dockery v. Thomas Jefferson Univ. Hosps., Inc.**, 253 A.3d 716, 721 (Pa. Super. 2021) (citation omitted).