2008 ME 181

**PEARSE ASSOCIATES, LLC**

v.

**Alan J. PERRY et al.**

Supreme Judicial Court of Maine.

Argued: Oct. 27, 2008.
Decided: Dec. 9, 2008.

Mark E. Dunlap, Esq. (orally), Norman, Hanson & DeTroy, Portland, ME, for the appellant.

Theodore H. Kurtz, Esq., Alan J. Perry, Esq. (orally), Kurtz & Perry, South Paris, ME, James M. Bowie, Esq. (orally),

Thompson & Bowie, Portland, ME, for the appellees.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, LEVY, and MEAD, JJ.

LEVY, J.

[¶ 1] Pearse Associates, LLC appeals from a summary judgment entered in the Superior Court (Oxford County, *Crowley, J.*) in favor of Alan J. Perry and Ada S. Perry finding that the formation of a contract between the parties was contingent on a condition precedent that had not been satisfied. The Perrys cross-appeal from a summary judgment entered on their third-party complaint against Pearse Associates's attorney, Paul Driscoll, and his law firm, Norman, Hanson & DeTroy, LLC (collectively Attorney Driscoll), finding that no escrow agreement existed between Attorney Driscoll and the Perrys. We affirm in part and vacate in part, vacating the summary judgment awarded to the Perrys and affirming the summary judgment awarded to Attorney Driscoll.

## I. BACKGROUND

[¶ 2] The dispute giving rise to this case has a convoluted history associated with three failed purchase agreements by which Alan and Ada Perry sought to sell the Pleasant Point Inn in Lovell, Maine, and the two lawsuits that resulted. Alan and Ada Perry are the sole trustees, beneficiaries, and shareholders of the Inn. Pearse Associates, LLC was apparently created for the purpose of acquiring and developing the Inn, and its sole member is Michael Biszko. Biszko is in business with Nick Castel, who is in turn associated with Conway Lake Resorts, Inc. and Kezar Lake Management Company, LLC. Attorney Paul Driscoll of Norman, Hanson & DeTroy, LLC has represented Biszko, Castel, and their respective companies throughout these negotiations.

### A. The 2002 Purchase Agreement

[¶ 3] In August 2002, the Perrys signed a purchase agreement with Conway Lake Resorts, Inc., Nick Castel, and Kezar Lake Management, LLC (collectively, "Conway Lake Resorts") for the sale of the Inn. This agreement was amended over the following months. Disagreements arose and the Perrys filed a lawsuit in the Superior Court (Oxford County)[1] against the purchasers in 2004. Conway Lake Resorts subsequently filed a lis pendens notice in the form of an affidavit in the Oxford County Western District Registry of Deeds, placing all persons on notice that the property was under contract and that it would employ legal action if necessary to enforce its rights.

### B. The 2006 Settlement Agreement

[¶ 4] In June 2006, the Perrys and Conway Lake Resorts resolved the Superior Court action by entering into a court-approved settlement agreement providing that: (1) Conway Lake Resorts was granted an option to purchase the property, terminating on March 1, 2007; (2) the new purchase agreement would supersede the 2002 agreement; (3) Conway Lake Resorts could assign its rights under the agreement; and (4) if the parties failed to complete the purchase and sale by March 1, 2007, both the new agreement and the 2002 agreement would be deemed null and void, and Conway Lake Resorts would "immediately discharge any liens or encumbrances filed by the Defendants arising out of said agreements, and all documents relating to title."

---

1. *Pleasant Point Inn, et al. v. Conway Lake Resorts, Inc., et al.*, Docket No. CV–04–84.

[¶ 5] As will be explained in greater detail, no closing occurred by March 1, 2007. On July 6, 2007, the Superior Court (*Wheeler, J.*), issued a declaratory judgment declaring the 2002 Agreement, and any amendments or modifications to it, null and void. No appeal was taken from this judgment.

C. The 2007 Purchase Agreement

[¶ 6] From July 2006 until January 2007, the Perrys and Attorney Driscoll, now acting as counsel for Pearse Associates, negotiated a new purchase agreement. Although there were discussions that Pearse Associates might take an assignment of Conway Lake Resorts's contractual rights under the second agreement, the summary judgment record does not establish whether an assignment was completed. Instead, on January 15, 2007, the Perrys signed a new agreement prepared by Attorney Driscoll to sell the Inn to Pearse Associates, with closing to occur by March 1, 2007. Alan Perry mailed the signed agreement to Attorney Driscoll on January 17, 2007, with a cover letter, the body of which is central to the current dispute:

Enclosed please find four executed Beneficial Interest and Stock Purchase Agreements dated January 15, 2007. . . . As we discussed, you will hold these agreements in escrow pending my receipt of satisfactory documentation reflecting effective releases by Conway Lake Resorts and Kezar Lake Management of the existing agreements.

Once the terms of the escrow have been satisfied and the purchaser has executed the agreements, kindly return one executed original to me. Thank you.

[¶ 7] Attorney Driscoll responded by email on February 2, 2007: "I am holding everything in escrow per the terms of our agreement subject to getting a formal termination of the existing Purchase and Sale Agreement in place which, I understand, is imminent."

[¶ 8] By a letter dated February 16, 2007, Attorney Driscoll tendered to the Perrys a written termination agreement signed by Conway Lake Resorts terminating the 2002 purchase agreement. The termination agreement required the Perrys' signature, and it included the following clause:

3. Buyers [Conway Lake Resorts] and Sellers [the Perrys] hereby release and discharge one another of and from *any and all* claims, demands, actions, causes of action, *suits at law and/or in equity relating to or arising out of the Agreement* and any of the transactions and/or undertakings contemplated to be performed thereunder by any of them.

(Emphasis added.)

[¶ 9] On February 21, 2007, Alan Perry sent a letter to Attorney Driscoll expressing Perry's belief that the termination agreement was not satisfactory because it failed to address the 2004 lis pendens filed in the Registry of Deeds by Conway Lake Resorts:

I have received the proposed Termination of Purchase and Sale Agreement which *you drafted and had your clients execute prior to any discussion or review by me.* The agreement is *not satisfactory* in that it fails to address the recorded affidavit alleging the existence and continued effect of the purchase and sale agreement. That affidavit is a cloud on the title and needs to be released prior to March 1. If the Termination Agreement, with the addition of appropriate language, is intended to counter that affidavit, a valid jurat needs to appear so that it may be recorded.

I also am not clear why we should release CLR, KLM and Castel prior to the closing with their successor in interest.

(Emphasis added.)

[¶ 10] Attorney Driscoll believed, however, that the condition permitting him to release from escrow the purchase and sale agreement dated January 15, 2007, had been met and forwarded the purchase agreement signed by the Perrys to Pearse Associates for signature. Meanwhile, Pearse Associates received an inspection report from its engineer indicating that the Inn did not comply with certain regulations, which, Pearse Associates claimed, violated warranties in the new purchase agreement. On March 1, 2007, the Perrys appeared at Attorney Driscoll's office prepared to close. Pearse Associates, however, failed to appear and refused to close until the claimed warranty problems were resolved.

[¶ 11] On March 5, 2007, Pearse Associates initiated this action by filing a complaint seeking specific performance, breach of contract, and abatement of the purchase price. The Perrys raised as a defense that no contract existed, while simultaneously counterclaiming for breach of contract. They also filed a third-party complaint against Attorney Driscoll, claiming breach of an escrow agreement based on Attorney Driscoll's release of the purchase agreement to Pearse Associates prior to satisfaction of the condition requiring "satisfactory documentation reflecting effective releases by Conway Lake Resorts and Kezar Lake Management of the existing agreements" expressed in Alan Perry's January 17, 2007, letter.

[¶ 12] The court granted a summary judgment to the Perrys on Pearse Associates's breach of contract claim, concluding that there was no enforceable contract because Alan Perry's January 17, 2007, letter

created a condition precedent that required Pearse Associates to obtain a release of the lis pendens affidavit, and that the condition had not been satisfied by the termination agreement prepared by Attorney Driscoll. The court noted that although the purchase agreement contained no language requiring a release of the lis pendens, the parties had agreed to the same as evidenced by Attorney Driscoll's February 2, 2007, email in which he wrote, "I am holding everything in escrow per the terms of our agreement subject to getting a formal termination of the existing Purchase and Sale Agreement in place which, I understand, is imminent." In addition, the court observed that the Perrys' appearance on the designated closing date did not alter the conclusion that there was no enforceable contract:

> [T]heir appearance at the closing was in anticipation of all remaining issues between the parties being worked out, not in recognition that there were no remaining bars to the execution of an enforceable contract. One such remaining hurdle included satisfaction of the condition precedent, which did not occur.

[¶ 13] The court also granted a summary judgment to Attorney Driscoll on the Perrys' breach of escrow agreement claim, finding that no escrow agreement existed because there was no genuine dispute of material fact that Attorney Driscoll was not acting as an escrow agent for the Perrys. The Perrys and Pearse Associates subsequently agreed to voluntarily dismiss the Perrys' counterclaim, a final judgment was entered, and Pearse Associates and the Perrys each filed notices of appeal.

## II. DISCUSSION

██ [¶ 14] We review grants of summary judgments de novo, viewing the facts

in the light most favorable to the non-moving party. *Morgan v. Kooistra*, 2008 ME 26, ¶ 19, 941 A.2d 447, 453.

## A. Enforceability of the 2007 Agreement

■ [¶ 15] As previously noted, Pearse Associates's challenge turns on whether it satisfied the condition that the Perrys receive "satisfactory documentation reflecting effective releases by [Conway Lake Resorts] of the existing agreements." Pearse Associates contends that the Superior Court erred by concluding that this condition was not satisfied when Attorney Driscoll delivered the termination agreement to the Perrys. It argues that the use of the words "satisfactory" and "effective" in Alan Perry's letter made the condition inherently ambiguous, and that disputed issues of material fact exist as to: (1) what the condition precedent meant; (2) whether it was satisfied by the termination agreement; and, more fundamentally, (3) whether, under the circumstances, a valid condition precedent arose at all. Pearse Associates further argues that all the Perrys had to do to clear the title to their real estate was to have their execution of the termination agreement properly acknowledged, and they could then record the termination agreement at the Registry of Deeds.

[¶ 16] The Perrys counter that, when viewed in the context in which it was created, the condition precedent was not ambiguous in any material respect. They argue that both parties knew: (1) that the judicial settlement agreement created a deadline of March 1, 2007, for a closing to occur; (2) that the Perrys were required by the judicial settlement agreement to convey marketable title; and (3) that the Perrys would be unable to convey market-able title unless the termination agreement effectively terminated the lis pendens. As to the third point, the Perrys assert that not only did the termination agreement fail to mention the lis pendens, it also lacked an acknowledgement and could not be recorded at the Registry of Deeds.[2] The Perrys observe that "[w]hile the words 'satisfactory' and 'effective' might be implicit in any request for a release, their explicit declaration in Perry's letter emphasizes that any termination had to have practical effect in the real world."

[¶ 17] When an obligor's duty to perform is conditioned on his or her satisfaction with respect to an act, the standard to be employed in determining if the condition was met is generally that of an objectively reasonable person. Restatement (Second) of Contracts § 228 (1981). With this standard in mind, we agree with Pearse Associates that key material facts remain in dispute for the following three reasons.

[¶ 18] First, the condition precedent required that the Perrys receive "satisfactory documentation reflecting effective releases by [Conway Lake Resorts] of the existing agreements." The termination agreement released and discharged "any and all claims, demands, actions, causes of action, suits at law and/or in equity relating to or arising out of the Agreement and any of the transactions and/or undertakings contemplated to be performed thereunder." The Perrys do not contend that the termination agreement was deficient because it referred to a singular "Agreement," as opposed to the plural "existing agreements" employed in the January 17, 2007, letter. Apart from this discrepancy, and as Pearse Associates contends, the termination agreement on its face satisfies

---

**2.** Unless covered by an exception, all written instruments must be acknowledged before an individual falling into one of the categories listed in 33 M.R.S. § 203 (2007), including a notary public, an attorney-at-law, or a clerk of the court.

the requirement of an effective release. Furthermore, contrary to the Perrys' contention, even though the individuals who signed the termination agreement on behalf of Conway Lake Resorts did not have their signatures acknowledged, the Perrys could have had their own signatures acknowledged, thus making the document suitable for recording at the Registry of Deeds. Title 33, section 203, provides that a written instrument may be recorded if acknowledged by "the persons executing any such written instruments, or by one of them." 33 M.R.S. § 203. Thus, the lack of an acknowledgement of the signatures of the Conway Lake Resorts signatories did not render the termination agreement unrecordable at the Registry of Deeds.

■ [¶ 19] Second, the conclusion that the condition precedent is unambiguous is undermined if one adopts the Perrys' view that it is implicit in the language of the January 17, 2007, letter that, to be satisfactory and effective, a release of the existing agreement had to (1) expressly address the lis pendens affidavit, and (2) contain an acknowledgement of the signatures of the Conway Lake Resorts signatories. In support of this view, the Perrys cite as parol evidence the 2006 settlement agreement which required the discharge of any liens and encumbrances filed by Conway Lake Resorts. However, parol evidence is only employed to construe a contractual term if the term is first deemed ambiguous. *Handy Boat Serv., Inc. v. Professional Servs., Inc.*, 1998 ME 134, ¶ 13, 711 A.2d 1306, 1309 ("Extrinsic evidence concerning a specific provision of an integrated agreement may not be considered unless the court determines the language of that provision to be ambiguous."). In addition, the parties dispute whether Pearse Associates was an assignee of the 2006 agreement, and, therefore, obligated by it to discharge the lis pendens affidavit.

[¶ 20] Third, because it is necessary to look beyond the language of the January 17, 2007, letter to determine the meaning of the condition precedent, the Court must determine the parties' intention. Pearse Associates contends that it did not intend to agree to be bound to take steps to terminate the lis pendens, and further that its agreement was not needed for the Perrys to accomplish the termination. Pearse Associates also argues that the Perrys only demanded that Pearse Associates terminate the lis pendens as a pretext to avoid responsibility for addressing the warranty defects that Pearse Associates had discovered. The Perrys dispute these assertions, all of which are material to determining the parties' intent.

[¶ 21] Based on the preceding factual dispute, we vacate the summary judgment granted in favor of the Perrys.

## B. The Escrow Agreement

■ [¶ 22] The Perrys contend that the court erred in finding that the Perrys did not consider Attorney Driscoll to be a neutral third party and that Attorney Driscoll was therefore not acting as an escrow agent. They assert that because the intent of the parties is the primary determinant in the formation of an escrow agreement, and because Alan Perry told Attorney Driscoll to hold the purchase and sale agreement in escrow, a valid escrow agreement arose when Attorney Driscoll indicated his acceptance. Attorney Driscoll responds that the use of the term "escrow" in Alan Perry's letter was insufficient to create an escrow agreement and that Perry knew Attorney Driscoll was acting as an agent for Pearse Associates, not as a neutral third party acting in an individual capacity. Based on the summary judgment record, we agree with the Superior Court's conclusion that no valid

escrow agreement arose between the parties.

[¶ 23] Although a party generally cannot deposit funds in escrow with an agent of an obligor or obligee, an agent "may become an escrow agent if acting in an individual capacity and where it would not be antagonistic to the principal's interest." *Johnson v. Exclusive Props. Unlimited*, 1998 ME 244, ¶ 15, 720 A.2d 568, 573. When determining whether the attorney for a party acted in the capacity of an escrow agent, "the intention of the parties at the time of deposit is controlling." *Progressive Iron Works Realty Corp. v. Eastern Milling Co.*, 155 Me. 16, 20, 150 A.2d 760, 762 (1959). Although the use of the term "escrow" is indicative of intent, "it does not necessarily create an escrow." *Johnson*, 1998 ME 244, ¶ 14, 720 A.2d at 573.

[¶ 24] In their writings on January 17 and February 2, 2007, both Alan Perry and Attorney Driscoll made statements to the effect that the purchase and sale agreement would be held in escrow. Contrary to the Perrys' argument, however, without more, this exchange does not express the requisite intent to create a binding escrow agreement, particularly when measured against Alan Perry's admission that he knew that Attorney Driscoll continued to represent Pearse Associates in the negotiations.

[¶ 25] Moreover, the Perrys' statement of material facts does not assert that the Perrys viewed Attorney Driscoll as acting in an individual capacity separate from his role as agent for Pearse Associates. In his letter of February 21, 2007, addressed to Attorney Driscoll, Alan Perry stated, "I have received the proposed [termination agreement] which you drafted and had *your clients* execute prior to any discussion or review by me." (Emphasis added.) Perry later averred that "Attorney Dris-

coll never responded to the notice that the terms of the escrow had not been satisfied, but, without notice to me, forwarded the documents to *his client* and promptly filed suit based on those documents." (Emphasis added.) Rather than supporting the view that Attorney Driscoll may have acted as a neutral third-party escrow agent, the record indicates, without dispute, that the Perrys viewed Attorney Driscoll as an agent acting on behalf of his principal, Pearse Associates. There are no other material facts asserted by the Perrys that would support the conclusion that a binding escrow agreement was agreed to by the parties.

[¶ 26] Viewing the record in the light most favorable to the Perrys, there are no disputed issues of material fact regarding the creation of an escrow agreement. Accordingly, we affirm the Superior Court's summary judgment granted in favor of Attorney Driscoll.

The entry is:

The summary judgment in favor of the Perrys is vacated; the summary judgment in favor of Attorney Driscoll is affirmed; case remanded for further proceedings consistent with this opinion.